915 A.2d 518

REINALDO CARMONA, PLAINTIFF–RESPONDENT, AND WILLIAM SANTIAGO, PLAINTIFF, v. RESORTS INTERNATIONAL HOTEL, INC., D/B/A RESORTS ATLANTIC CITY, DEFENDANT–APPELLANT.

Argued September 11, 2006—Decided February 21, 2007.

356

*Rosemary Alito* argued the cause for appellant (*Kirkpatrick & Lockhart Nicholson Graham LLP,* attorneys).

*Caren Litvin* argued the cause for respondent (*Law Offices of Caren Litvin LLC,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal arises in the context of an employee who alleged that, after he complained about claimed unfair treatment, he was retaliated against in violation of the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–12d. Specifically, this appeal requires that we address two separate issues: whether the employee's complaint that allegedly triggers a retaliation claim must be made in good faith and on a reasonable basis, and whether an investigative report prepared by an employer, which the employer claims provided an independent basis for the employee's discharge, should have been admitted into evidence. Both the trial court and the Appellate Division held that the LAD contains no independent requirement that a plaintiff in a LAD-retaliation case also prove that the complaint predicate to a retaliation claim must have a reasonable, good-faith basis, and that it was not an abuse of discretion to exclude from evidence the investigative report prepared by the employer. We do not agree.

We hold that, in a case alleging retaliation under the LAD, the plaintiff bears the burden of proving that his or her original complaint was made reasonably and in good faith. Stated conversely, an unreasonable, frivolous, bad-faith or unfounded complaint cannot satisfy the statutory prerequisite necessary to establish liability for retaliation under the LAD. We also hold that, when an employer defends against a claim that an employee's discharge was the product of retaliation, an investigative report prepared by the employer that purports to demonstrate a non-

retaliatory reason for the employee's termination is a non-hearsay statement. Finally, we hold that the admissibility of an investigative report in these circumstances is subject not only to all other relevant evidentiary limitations, but also to proof that a decision maker relied on that report in deciding to discharge the employee from employment.

## I.

In 1999, plaintiff Reinaldo Carmona was hired as a front desk agent or clerk by defendant Resorts International Hotel, Inc., d/b/a Resorts Atlantic City (Resorts). As a front desk agent, plaintiff was responsible for checking guests into and out of Resorts. Plaintiff was employed by Resorts until November 9, 2001, when he was fired. The disputed reason for that termination—plaintiff's claim of retaliation for an internal claim of discriminatory or disparate treatment, or Resorts' claim that plaintiff was terminated for stealing—is what gives rise to this lawsuit.

According to plaintiff, he was a recovering cocaine user prone to relapses. Because of the relapses, plaintiff missed work on several occasions. Under Resorts' progressive discipline policy for absenteeism, a policy that did not apply in instances of serious misconduct, including theft, the absences accumulated as "points" against plaintiff. By August 2001, plaintiff had accumulated sufficient "points" so that another unexplained or unauthorized absence would render him liable to termination. His supervisor explained to plaintiff that absences pursuant to an approved medical leave would not be counted against him. Yet, plaintiff did not explore seeking an approved medical leave to treat his cocaine dependency. Instead, he focused on other Resorts employees who had applied for and received approved medical leaves of absence. He later claimed that Resorts applied its absenteeism/termination policy unevenly.

In particular, plaintiff noted the case of co-plaintiff William Santiago, who also was employed as a front desk agent at Resorts.

In November 2001, Santiago reported to work although he was suffering from problems with his face. His supervisor sent Santiago to the hospital, where he was diagnosed with Bell's Palsy. Santiago returned to work that same day. He did so because he was concerned that he had reached the limit on "points" he could accumulate as a result of absenteeism, which placed him at risk of termination from employment. In this instance, Santiago's supervisor elected not to discipline him, choosing instead to make an "exception."

Plaintiff also focused on Robin Hewitt, another front desk agent who had excessive absences. He was informed by a supervisor that Hewitt had applied for and received a medical leave and, thus, her absences were not counted for disciplinary purposes. Plaintiff confirmed this information by looking at Hewitt's attendance sheet, which contained entries for "leave of absence" or "FMLA" [1] but did not accumulate any "points" based on her absences.

Resorts had adopted an anti-discrimination policy, and employees who complain of discrimination are encouraged to bring those complaints to Resorts' internal equal employment opportunity (EEO) office. Accordingly, three months after having this information in hand, on Tuesday, November 6, 2001, plaintiff went to Resorts' EEO office to complain. He met with the director of EEO at Resorts, noted that Hewitt was receiving medical leave without the accumulation of any points, and claimed that

> it wasn't fair that [Hewitt] was out and she was only employed at Resorts for like no more than three months and she was placed on the family leave, and I have been there two years and I wasn't placed on one, and I couldn't go to a hospital [for drug rehabilitation] because of being afraid of getting points, which I brought a doctor's note for that and I got points anyway.

Plaintiff attributed the difference in treatment between Hewitt, who was on medical leave, and plaintiff and Santiago, who had not been placed on medical leave, to racism: Hewitt is Caucasian,

---

1 "FMLA" is an acronym commonly used to refer to medical leaves of absence under either the federal Family and Medical Leave Act of 1993, 29 *U.S.C.* §§ 2601–2654, or the New Jersey Family Leave Act, *N.J.S.A.* 34:11B–1 to –16, or both.

while Santiago and plaintiff are Hispanics. Resorts' EEO director informed plaintiff that she would conduct an investigation of his allegations. However, shortly after she started her inquiry, she was informed that both plaintiff and Santiago were being terminated for stealing. Resorts' EEO director then ended her investigation of plaintiff's allegations.

On Monday, November 5, 2001—the day before plaintiff complained to Resorts' EEO office—plaintiff and Santiago were observed improperly upgrading rooms in exchange for tips. That is, plaintiff and Santiago would dole out room accommodations that were better, larger, or more luxurious than what the guest was being charged for, and the guests would then "tip" plaintiff and Santiago for the upgraded accommodations. Plaintiff was not a stranger to those allegations: he had twice before been reprimanded—in October 1999 and July 2000—for upgrading rooms without authorization. Those observations made their way to Resorts' labor relations counselor, who asked that the hotel reservations data for that day be produced. That data showed that both plaintiff and Santiago, without authorization, had upgraded a number of hotel rooms for guests; Santiago alone upgraded twenty of twenty-six hotel rooms. The information was then transmitted to Resorts' investigations department.

On Wednesday, November 7, 2001, two Resorts investigators interviewed Santiago. According to one of the investigators, "[d]uring the interview Mr. Santiago admitted that he had done upgrades for gratuities[,] to receive gratuities. He also implicated other employees [including plaintiff]. He also informed [Resorts] that [plaintiff] had a password of one of the supervisors to access the computer to do this." Based on those allegations, on November 8, 2001, the Resorts investigators asked that the front desk supervisors audit plaintiff's work for the prior month. That audit showed that plaintiff had improperly and without authorization upgraded twenty-seven rooms.

Plaintiff was not scheduled to work on either November 7 or 8, 2001. When he returned to work on November 9, 2001, he too

was interviewed by Resorts' investigators. An investigator testified that

> [w]hen I was interviewing [plaintiff] he admitted that he did make upgrades of patrons. He was questioned as to knowing that he didn't have the authority to, and he admitted that he didn't have the authority to do so. He was questioned as to his motive for doing that, and I asked him specifically . . . was the motive for the upgrades to receive gratuities, and he said no. He denied receiving any gratuities for doing it. I asked him then why, why did you do it? And he had no answer.
>
> Shortly afterwards he said he only had one thing left to say, and that was that he believed it was time for him to change careers. And that was about the substance of our conversation.

Plaintiff's version of this interview differs in tone from the investigator's testimony. Significantly, even though plaintiff denies receiving any gratuities in exchange for unauthorized room upgrades, he does not deny upgrading rooms without authorization. Further, although plaintiff led the investigator to believe that plaintiff was resigning from employment, he in fact was fired that day. During the investigation, the investigators collected their investigative material, ultimately compiling a report concerning this incident.

In April 2002, plaintiff sued Resorts, claiming that Resorts had violated the LAD by allowing a hostile work environment; by discriminating against him in respect of the medical leave of absence and attendance policy; and by retaliating against him for complaining to Resorts' EEO office of the alleged harassment and discrimination.[2] Plaintiff voluntarily withdrew his hostile work environment and discrimination claims, but maintained his retaliation claim. Thus, according to plaintiff, the issues joined for trial were crystallized: did Resorts retaliate against him when it terminated him three days after he filed his discrimination complaint against Resorts, and was Resorts' investigation into the room upgrades merely a pretext to justify that retaliation?

---

[2] Santiago also was a named plaintiff in the case, and, in that capacity, was deposed. However, before jury selection began, his claims were dismissed and his counsel relieved from continuing to represent him because his counsel had been unable to locate him for a year immediately preceding the trial. Portions of Santiago's deposition were read to the jury.

At trial, Resorts sought to introduce the investigative report into evidence. In Resorts' view, the investigative report was a business record exempt from the reach of the hearsay rule,[3] and was relevant[4] to prove "the purpose of motivation, which is what this case is about, what was Resorts doing, what was Resorts thinking." Plaintiff objected to this proffer, and the trial court, explaining that it did not "even think this is a close call[,]" ruled that the report was not a "contemporaneous business record[,]" and that it was "completely hearsay, and it is simply not admissible." The trial court nonetheless allowed Resorts to "pursue the fact that there was an investigation where a report was formed and that people made entries, ... to show that there was a process that Resorts was following in going through an investigation and the basic details of how that is set up and what is done[.]" As provided by *N.J.R.E.* 612, the trial court also permitted the use of the investigative report to refresh the investigator's recollection.

After the close of the evidence but before instructing the jury, the trial court, at Resorts' urging, focused on part of plaintiff's burden of proof in respect of his retaliation claim. Observing that there was no question that plaintiff had made a complaint of discrimination to Resorts itself, the trial court explained that

[t]he issue that's in dispute, I think, from what I understand of counsel[,] legally is whether or not the Court has to instruct the jury that [plaintiff] not only had to

---

[3] *See N.J.R.E.* 803(c)(6) ("Whether or not the declarant is available as a witness ... [a] statement contained in a writing or other record of acts, events, conditions, and, subject to *Rule* 808 [excluding expert opinions contained in hearsay statements], opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person [shall be admissible], if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.").

[4] *N.J.R.E.* 401 defines "relevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."

have made the complaint but he had to have a reasonable good faith basis for making the complaint[,] which some of the Title 7 cases federal cases say[.]

The trial court rejected any parallel between a plaintiff's burden of proof in the cases decided under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* §§ 2000e to 2000e–16, and those determined under the LAD. The trial court did allow Resorts to re-open that issue the next day.

The following morning, Resorts addressed its "contention that[,] as part of his case[, plaintiff] is required to prove that he had a reasonable good faith belief that there was discrimination occurring." Resorts noted that, because an earlier complaint is always a condition precedent to a retaliation claim, an anomalous result would occur if a reasonable good faith belief in the basis of a plaintiff's earlier complaint was *not* a condition precedent to a retaliation claim. Resorts' counsel remarked that

[i]f we think about it[,] of putting no such requirement in, Judge, I think we create a situation where anybody who thinks they're about to be fired can run in and say I'm being discriminated against and he has protected activity. I don't think that was the intent of the statute. Frankly, I think in most cases this isn't going to be an issue, but in some cases, and I think this is one of them[,] where there is somewhere the claim of discrimination [that] is so tenuous that there is a fact issue about what [plaintiff] reasonably could have believed in that situation [and] I think [that] is a question that needs to go to the jury as part of the plaintiff's burden of proof.

The trial court disagreed, holding that "[i]f the jury believes [plaintiff was] fired because [he] made this complaint[,] this is a reasonable complaint to make, and the Court rules that that's true as a matter of law so whether reasonable is required or not I don't think it is an issue in this case." The trial court's instruction to the jury on plaintiff's burden of proof consisted, in its entirety, of the following:

In order to prove a claim under [the retaliation] provision of the New Jersey Law Against Discrimination plaintiff must establish certain elements as follows:

One, that plaintiff engaged in a protected activity. Two, that the employer knew that the plaintiff had engaged in a protected activity. Three, that plaintiff was thereafter subjected to an adverse employment decision by the employer. And, four, there was a causal link between the plaintiff engaging in the protected activity and the adverse action. *I charge you that if plaintiff complained about discrimination based on his being a Latino, that that constitutes a protected activity for*

*the purpose of meeting the first of the four requirements. Therefore, to carry his burden of proof [plaintiff] must prove he made a complaint of discrimination by a preponderance of the evidence.* He then must prove the three elements previously discussed.

In assessing whether there is a causal connection between his complaint and his discharge, you're to determine whether there are circumstances that justify an inference of a retaliatory motive. You can consider the time between the complaint to the EEO and the termination, but you should consider all the evidence, not just one factor in making your decision. Here Resorts claimed that they had a legitimate non-retaliatory business reason for terminating him, which was misconduct by the plaintiff on the job. Once the employer presents a non-retaliatory reason, then the plaintiff must show that more likely than not it was retaliation that motivated the employer's action. The claimant can accomplish this by proving that Resorts' stated reason was a pretext for retaliation or that retaliation for making a complaint of discrimination was more likely the reason that motivated the employer. In other words, plaintiff must prove that the articulated reason is unworthy of credence.

If you find that the plaintiff was terminated for complaining about discrimination and that the defendant's stated reason was just a pretext, and that, in fact, he was terminated for his complaint, you should find in favor of the plaintiff. If plaintiff hasn't proven all the elements of this claim, then you should find for the defendant. The law does not require th[at] Resorts treat its employees fairly, but it does make it illegal to retaliate against an employee for a complaint of discrimination. [ (emphasis supplied).]

Ruling on special interrogatories, the jury unanimously found that plaintiff "proved by a preponderance of [the] evidence that he complained to the EEO office at Resorts about discriminatory employment practices[;]" that plaintiff "prove[d] it was more likely than not that the reason Resorts gave for [plaintiff's] termination was a pretext or cover-up and the real reason for his termination was retaliation for his complaint of discrimination[;]" and that plaintiff "prove[d] by a preponderance of the evidence that he suffered emotional distress because of a retaliatory discharge from Resort[s.]" The jury unanimously awarded plaintiff $175,000 in compensatory damages and $3,400 in lost wages.

After the jury was excused and at Resorts' request, the trial court placed on the record the sole question the jury had during deliberations:

The jury had requested—the only question they had was a request that they be provided with D–4, which was the investigative report. I believe defense counsel had offered to submit that into evidence, and plaintiff's counsel objected, and the

Court ruled that it was not admissible. I, therefore, instructed the jury that it was not in evidence, and we didn't give it to them.

Finally, in response to plaintiff's subsequent motion for attorneys' fees, costs and interest, the trial court awarded plaintiff "$102,-448.13 in legal fees incurred through the conclusion of the trial," "$8223.74 in legal fees incurred for post-judgment services," and "an additional $3311.08 in costs," for an aggregate of $113,982.95 in attorneys' fees and costs; post-judgment interest on both the fees and costs was also awarded.

Resorts appealed. In an unpublished, *per curiam* opinion, the Appellate Division affirmed the judgment of the trial court. In respect of the jury instruction requested by Resorts but denied by the trial court, the panel held that it

agree[d with the trial court] that the right of every potential LAD claimant to vindicate his or her rights under the law granting protection against unlawful discrimination must remain free from qualifications not established in the statute, and that employers and others who might be called upon to defend against such claims are amply protected by existing proof requirements.

It explained that "in a retaliation case, such as this one, plaintiffs must establish, among other proof requirements, that 'participation in the protected activity caused the retaliation.' " (quoting *Craig v. Suburban Cablevision, Inc.*, 140 *N.J.* 623, 629–30, 660 *A.*2d 505 (1995)). As the Appellate Division saw it, "[i]n applying this requirement, and assuming, of course, a legitimate business reason for the employer's adverse action, we have no doubt that all reasonable juries will reject retaliation claims allegedly resulting from discrimination complaints that were filed in bad faith without any factual bases." The panel eschewed the construct urged by Resorts for the following reason:

Adopting the definition of protected activity urged by Resorts as a separate proof element, however, runs the risk of causing the rejection of meritorious retaliation claims simply because the jury concludes that plaintiff failed to establish a sufficient factual basis for his or her discrimination complaint. We do not believe that such an additional burden on plaintiffs acting in good faith is warranted.

Finally, in respect of Resorts' claim that the trial court improperly excluded the investigative report, particularly in light of the sole jury question on that issue, the panel concluded that "all of the trial court's evidentiary rulings were well within the trial judge's

discretion [and that t]he judge gave ample, affirmable reasons for each ruling."

Resorts sought certification, raising both its requested jury instruction in respect of a plaintiff's burden of proof in a LAD retaliation case, and the admissibility of its investigative report. We granted the petition. 186 *N.J.* 243, 892 *A.*2d 1290 (2006).

## II.

Resorts' argument in respect of a plaintiff's burden of proof in a LAD retaliation case is as follows. According to Resorts, in order to trigger protection under the LAD, an employee's activity must, at a minimum, be reasonable and in good faith. Thus, Resorts asserts, the jury must be instructed that the bare filing of a complaint—what at first blush appears to be engaging in LAD-protected activity—is insufficient to invoke the remedies available under the LAD. Stated differently, Resorts urges that the safe harbor created by the LAD, with its broad reach and substantial sanctions, cannot be accessed save by those who are in fact engaged in the activity the LAD is designed to protect, and not those who seek its refuge based on a pretext or some other reason unworthy of protection.

Resorts also argues that the trial court abused its discretion when it refused to admit into evidence Resorts' investigative report in respect of plaintiff's unlawful activities. According to Resorts, the investigative report was not barred by the hearsay rule because it was not "offered in evidence to prove the truth of the matter asserted[,]" *N.J.R.E.* 801(c). Instead, Resorts asserts, the investigative report was offered to prove "(i) what steps [Resorts] took to investigate plaintiff's misconduct before terminating his employment and (ii) its motivation for terminating his employment." In Resorts' view, reports relevant to a party's motive for an action are universally admitted into evidence. Resorts claims that the failure to admit its investigative report was prejudicial for three reasons: (1) the employer's intent is central to a discrimination case; (2) plaintiff's counsel attacked Resorts'

investigation; and (3) its absence is the subject of the only question posed by the jury during its deliberations. Finally, Resorts notes that the trial court's concerns in respect of the investigative report's reliability were unfounded.

Plaintiff, however, asserts that the trial court and the Appellate Division correctly ruled that overarching policy considerations trump the notions advanced by Resorts. In plaintiff's view, a plaintiff claiming retaliation does not have to prove the veracity of his or her original discrimination complaint; he or she need only prove that the original complaint was in fact filed and that he or she was retaliated against because of that filing. For those reasons, plaintiff makes no legal distinction between original complaints that are reasonable and in good faith, and those original complaints that are filed capriciously, maliciously, or intentionally solely as a subterfuge to purposely invoke the LAD's protections. Like the Appellate Division, plaintiff implies that a jury will sort out those latter instances and find accordingly.

In respect of Resorts' investigative report, plaintiff claims that Resorts offered the investigative report precisely for the truth of the matter asserted: Resorts' claim that plaintiff was engaged in illegality. Plaintiff also supports the trial court's reasoning that the report was unreliable and, hence, inadmissible under the business records exception to the hearsay rule. In the alternative, plaintiff argues that if the trial court wrongly excluded the investigative report, then that error was harmless.

We address first Resorts' claim that, as a condition precedent to a retaliation claim under the LAD, a plaintiff bears the burden of proving that his or her initial complaint that triggered the later claimed retaliation was filed reasonably and in good faith in the first instance. We then address the admissibility of Resorts' investigative report in the context of this retaliation lawsuit.

### III.

### A.

The anti-retaliation section of the LAD provides that

[i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

. . . .

d. For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

[*N.J.S.A.* 10:5–12d.]

The LAD is one of New Jersey's leading legislative pronouncements that set forth "the familiar proposition that the clear public policy of this State is to eradicate invidious discrimination from the workplace." *Craig v. Suburban Cablevision, Inc.,* 140 *N.J.* 623, 630, 660 *A.2d* 505 (1995) (citing *Fuchilla v. Layman,* 109 *N.J.* 319, 334–35, 537 *A.2d* 652, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.2d* 51 (1988)). In the development of this State's anti-discrimination jurisprudence,

we have frequently looked to case law under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e, for guidance in developing standards to govern the resolution of LAD claims. *See Erickson v. Marsh & McLennan Co.,* 117 *N.J.* 539, 549–50, 569 *A.2d* 793 (1990) (explaining that New Jersey Supreme Court has adopted methodology of proof used in Title VII cases for use in LAD cases); *Shaner v. Horizon Bancorp.,* 116 *N.J.* 433, 437, 561 *A.2d* 1130 (1989) (noting that LAD standards "have been influenced markedly by the experience derived from litigation under federal anti-discrimination statutes"); *Peper v. Princeton Univ. Bd. of Trustees,* 77 *N.J.* 55, 82–83, 389 *A.2d* 465 (1978) (adopting framework formulated in *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.2d* 668 (1973), for litigation under Title VII); *Drinkwater v. Union Carbide Corp.,* 904 *F.2d* 853, 865 (3d Cir.1990) (stating that New Jersey courts would apply Title VII standard to claims under the LAD); *Weiss v. Parker Hannifan Corp.,* 747 *F.Supp.* 1118, 1126 (D.N.J.1990) (same).

[*Id.* at 631, 660 *A.2d* 505.]

We have explained our process for importing the jurisprudence developed under the federal Civil Rights Act of 1964 thusly:

In construing the terms of the LAD, this Court has frequently looked to federal precedent governing Title VII ... as "a key source of interpretive authority." *Grigoletti* [*v. Ortho Pharm. Corp.*], 118 *N.J.* [89,] 97, 570 *A.2d* 903 [(1990)]. Although the "substantive and procedural standards that we have developed under the State's LAD have been markedly influenced by the federal experience," *ibid.,* we have "applied the Title VII standards with flexibility" and "have not hesitated

to depart" from federal precedent "if a rigid application of its standards is inappropriate under the circumstances." *Id.* at 107, 570 *A.*2d 903.

[*Lehmann v. Toys 'R' Us,* 132 *N.J.* 587, 600–601, 626 *A.*2d 445 (1993).]

■ Our continuing examination of the LAD has led us also to look to subsequent legislative enactments for guidance on the LAD's scope. Thus, we have compared the LAD with the later-adopted Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, which was enacted "to provide 'broad protections against employer retaliat[ion]' for workers whose whistle-blowing actions benefit the health, safety and welfare of the public." *Feldman v. Hunterdon Radiological Assocs.,* 187 *N.J.* 228, 239, 901 *A.*2d 322 (2006) (quoting *Mehlman v. Mobil Oil Corp.,* 153 *N.J.* 163, 179, 707 *A.*2d 1000 (1998)). We have held that

courts frequently compare CEPA to LAD, applying the legal tests and frameworks developed under one to the other, because "CEPA, like [LAD], is a civil rights statute." *Kolb v. Burns,* 320 *N.J.Super.* 467, 477, 727 *A.*2d 525 (App.Div.1999). Indeed, we have emphasized that the two statutes share a similar purpose: "Both CEPA and LAD ... seek[ ] to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority by employer." *Abbamont[ v. Piscataway Twp. Bd. of Educ.*], 138 *N.J.* [405,] 417–18, 650 *A.*2d 958 [ (1994) ] (holding that LAD principles of employer liability are "fully applicable" to action brought under CEPA).

[*Id.* at 241–42, 901 *A.*2d 322.]

Thus, to sustain a cause of action under CEPA's anti-retaliation provisions, it is not enough that the employee "blow any whistle." A CEPA plaintiff must show that "he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy[.]" *Dzwonar v. McDevitt,* 177 *N.J.* 451, 462, 828 *A.*2d 893 (2003).

That continuing examination leads us to this case.

### B.

The trial court and the Appellate Division correctly concluded that the plain language of the LAD retaliation provision does not include the requirement that a plaintiff also prove, in addition to

the standard elements of a LAD cause of action, that he or she had a good-faith, reasonable belief that he or she was engaged in protected activity. For that reason, both the trial court and the Appellate Division deemed it inappropriate to graft such a requirement on to this statute and, thus, to charge the jury in respect of that requirement. Because a requirement that a LAD-retaliation plaintiff demonstrate that his underlying complaint was reasonable and in good faith is entirely consonant with the purpose of the LAD, we disagree. In doing so, we follow parallel federal precedents, under which a plaintiff must show that "he had a reasonable, good-faith belief that discrimination occurred to prevail on a retaliation claim[,]" *Jackson v. Birmingham Bd. of Educ.*, 544 *U.S.* 167, 187, 125 *S.Ct.* 1497, 1512, 161 *L.Ed.*2d 361, 380 (2005) (Thomas, J., dissenting), a tenet universally observed by every United States Court of Appeals that has considered the question. *Id.* at 187 n. 1, 125 *S.Ct.* at 1512 n. 1, 161 *L.Ed.*2d at 380 n. 1 (citing cases).[5]

We recognize this requirement as an element of plaintiff's required proofs in a LAD-retaliation claim because its absence

---

[5] Although we follow federal precedent, we need not explore the dichotomy that arises under the text of the federal Civil Rights Act of 1964 between conduct falling under the "opposition clause" and conduct falling under the "participation clause." *See Booker v. Brown & Williamson Tobacco Co.*, 879 *F.*2d 1304, 1312 (6th Cir.1989) (explaining differences between "opposition clause" and "participation clause"). We recognize that the text of the LAD also lists both "opposition" and "participation" as statutorily-protected activity; however, we see no reason to differentiate between them. In the context of Civil Rights Act actions, the Supreme Court of the United States recently has blurred the distinction between federal "opposition clause" claims and "participation clause" claims. *Clark County Sch. Dist. v. Breeden*, 532 *U.S.* 268, 271, 121 *S.Ct.* 1508, 1510, 149 *L.Ed.*2d 509, 514 (2001) (*per curiam*) (holding that employer was entitled to summary judgment because "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard"). The federal dichotomy also has been the subject of academic criticism. Edward A. Marshall, *Excluding Participation in Internal Complaint Mechanisms from Absolute Retaliation Protection: Why Everyone, Including the Employer, Loses*, 5 *Emp. Rts. & Emp. Pol'y J.* 549 (2001); Dorothy E. Larkin, Note, *Participation Anxiety: Should Title VII's Participation Clause Protect Employees Participating in Internal Investigations*, 33 *Ga. L.Rev.* 1181 (1999).

may well lead to abuse. Common sense tells us that the Legislature could not have intended that the LAD provide a safe harbor to one who files a baseless, meretricious complaint. It also tells us that the LAD cannot protect one who preemptively files a complaint solely in anticipation of an adverse employment action by the employer. The LAD was and is intended as a shield to protect employees from the wrongful acts of their employers, and not as a sword to be wielded by a savvy employee against his employer.

This question comes before us for the first time. Yet, the issue of whether a good faith and reasonableness requirement is part of a LAD-retaliation action has been addressed twice by the United States Court of Appeals for the Third Circuit. That Court consistently has interpreted the LAD to require that "a plaintiff establishes a retaliation claim if she shows that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice." *Drinkwater v. Union Carbide Corp.*, 904 *F.*2d 853, 865 (3d Cir.1990). *See also Aman v. Cort Furniture Rental Corp.*, 85 *F.*3d 1074, 1085 (3d Cir.1996) (holding that "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed" (citations and internal quotation marks omitted)). We are entirely in accord with the reasoning of those decisions.

Therefore, we hold that, in a case in which a plaintiff alleges retaliation under the LAD, *N.J.S.A.* 10:5–12d, the plaintiff bears the burden of proving that his or her original complaint—the one that allegedly triggered his or her employer's retaliation—was made reasonably and in good faith. The obverse also holds true: an unreasonable, frivolous, bad-faith, or unfounded complaint cannot satisfy the statutory prerequisite necessary to establish liability for retaliation under the LAD.

## C.

We apply this holding to the case before us. Here, Resorts requested and was denied an instruction to the jury to the effect that, as part of his case-in-chief, plaintiff was required to prove that he had a reasonable, good-faith belief for his underlying discrimination complaint as the basis for his later retaliation complaint. We explained the principles that govern our review of the jury charge in a LAD case as follows:

> A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case. *Rendine v. Pantzer,* 276 *N.J.Super.* 398, 431, 648 *A.*2d 223 (App.Div. 1994). In accordance with that principle, a jury charge must correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand. *Velazquez ex rel. Velazquez v. Portadin,* 163 *N.J.* 677, 688, 751 *A.*2d 102 (2000). An incorrect jury charge, however, constitutes reversible error only if the jury could have come to a different result had it been correctly instructed. *Ibid.* Moreover, in construing a jury charge, a court must examine the charge as a whole, rather than focus on individual errors in isolation. *Ryder v. Westinghouse Elec. Corp.,* 128 *F.*3d 128, 137 (3d Cir.1997). Stated differently, an appellate court must consider the language surrounding an alleged error in order to determine its true effect. *See, e.g.,* [*i*]*bid.* (considering sentence and paragraphs following erroneous sentence to be correct statements that negate effect of incorrect statement).
>
> [*Viscik v. Fowler Equip. Co.,* 173 *N.J.* 1, 18, 800 *A.*2d 826 (2002) (internal quotation marks omitted).]

■ In the circumstances of this case, and in light of the delay between the August 2001 claimed discrimination in the application of Resorts' absenteeism policy and plaintiff's November 2001 complaint to that effect—a complaint that purportedly arose several months before but was not filed until the day after an investigation into allegations of theft by plaintiff was started—we conclude that the jury charge as a whole was not "clear in how the jury should apply the legal principles charged to the facts of the case at hand." *Ibid.* That conclusion is inescapable because the trial court unequivocally charged the jury that the bare fact that plaintiff filed a complaint alleging discrimination, without more, was sufficient to satisfy plaintiff's burden in respect of the first element of his LAD-retaliation claim, a charge that we hold to be legally insufficient and incorrect. As a result, we must also

conclude that "the jury could have come to a different result had it been correctly instructed." *Ibid.*

## IV.

### A.

In respect of the admission of its investigative report, Resorts primarily argued before the trial court that the investigative report concerning plaintiff's activities of improperly upgrading room assignments in exchange for gratuities should have been admissible under the business records exception to the hearsay rule. As presented to the trial court, Resorts' investigative report

is kept in the regular course of business. It is the normal procedure for the investigations unit to prepare a report like this for every investigation that is done. The witness is going to testify about that. He is going to testify about what he did. This is the business record of it. It comes in for the purpose of motivation, which is what this case is about, what was Resorts doing, what was Resorts thinking.

The trial court rejected Resorts' proposed hearsay exception basis for the admission of the investigative report, finding that the report was hearsay and was unreliable. The trial court plainly did not address Resorts' additional, but later point: that the report was admissible for a non-hearsay purpose, that is, to prove Resorts' motive in terminating plaintiff's employment.

Before the Appellate Division, Resorts shifted the focus of its argument. There, Resorts emphasized that the investigative report was a non-hearsay statement and, thus, that the trial court abused its discretion in barring the admission of that report into evidence. Focusing on the purpose for which the investigative report was tendered, Resorts argued that "[t]he [investigative r]eport was not hearsay because it was not offered to prove the truth of the facts it contained" but "as evidence of [Resorts'] investigation of [plaintiff's] misconduct and [Resorts'] actual motivation for terminating [plaintiff's] employment, which was the central issue in the case." Resorts further asserted that "[t]he prejudice to Resorts from this erroneous ruling was considerable, as the [investigative r]eport was key to its defense." The panel

rejected that argument, concluding without explanation that its "review of the record discloses that all of the trial court's evidentiary rulings were well within the trial judge's discretion [and that t]he judge gave ample, affirmable reasons for each ruling."

### B.

Our *Rules of Evidence* define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). We have made clear that

[u]nder that definition, the hearsay rule applies when a declaration is offered to prove the truth of the statement attributed to the declarant. It follows, therefore, that if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no exception to the hearsay rule is necessary to introduce that evidence at trial. But if proffered evidence is hearsay, it can be admitted only pursuant to one of the exceptions to the hearsay rule.

[*State v. Long*, 173 *N.J.* 138, 152, 801 *A.*2d 221 (2002) (citations omitted).]

Thus, the threshold question here is whether Resorts' investigative report was being "offered in evidence to prove the truth of the matter asserted" or for some other reason.

Resorts submits that it "offered the [investigative r]eport as evidence of [Resorts'] investigation of [plaintiff's] misconduct and [Resorts'] actual motivation for terminating [plaintiff's] employment, which was the central issue in the case." We agree. We hold that, within the usual limits that govern the admissibility of evidence as a whole, an investigative report concerning an employee is admissible as non-hearsay statements whenever the employer's motivations are directly at issue. As a general proposition, "[w]here statements are offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not deemed inadmissible hearsay." *Russell v. Rutgers Cmty. Health Plan*, 280 *N.J.Super.* 445, 456–57, 655 *A.*2d 948 (App.Div.), *certif. denied*, 142 *N.J.* 452, 663 *A.*2d 1359 (1995) (citing *Jugan v. Pollen*, 253 *N.J.Super.* 123, 136–37, 601 *A.*2d 235 (App.Div.1992); *Statham v. Bush*, 253 *N.J.Super.* 607, 615, 602

*A.*2d 779 (App.Div.1992)). Moreover, in the specific context of a LAD retaliation claim, a personnel file was admissible as non-hearsay because "the information in [the] file bears on the reasonableness and good faith of defendant's conduct." *El–Sioufi v. St. Peter's Univ. Hosp.*, 382 *N.J.Super.* 145, 165, 887 *A.*2d 1170 (App.Div.2005). In respect of whether a report is a non-hearsay statement, we see no appreciable difference between a personnel file—which is created and maintained exclusively by the employer—and an investigative report.

█ Because *N.J.R.E.* 801(c) is identical to its federal counterpart, *Fed.R.Evid.* 801(c), further support is found in federal cases that parallel the LAD. For example, in an employment discrimination case,

> internal documents relied upon by the employer in making an employment decision are not hearsay as that term is defined in *Fed.R.Evid.* 801(c)—statements offered to prove the truth of the matters asserted. Rather, such documents are relevant and admissible because they help explain (or may help explain) the employer's conduct.
>
> [*Wolff v. Brown*, 128 *F.*3d 682, 685 (8th Cir.1997).]

*Accord Blanks v. Waste Mgmt.*, 31 *F.Supp.*2d 673, 680 (E.D.Ark. 1998) (same); *see also Bush v. Dictaphone Corp.*, 161 *F.*3d 363, 367 (6th Cir.1998) (holding that "the truth of the statements is not at issue as long as the declarants had a reasonable basis to believe them to be true"); *Hardie v. Cotter & Co.*, 849 *F.*2d 1097, 1101 (8th Cir.1988) (holding that "[t]he documents to which [plaintiff] objects were not offered to prove the truth of the material contained within them, but to demonstrate the state of mind of [the employer's] personnel who made the decision to discharge [plaintiff], a factor of crucial importance in wrongful discharge cases"); *Jones v. Los Angeles Cmty. Coll. Dist.*, 702 *F.*2d 203, 205 (9th Cir.1983) (holding that proposed hearing officer's decision and memoranda of unsatisfactory performance was admissible because employer "did not offer the documents to prove the truth of the allegations but to show that it had a legitimate basis for believing [plaintiff]'s conduct warranted termination"); *Moore v. Sears, Roebuck & Co.*, 683 *F.*2d 1321, 1322 (11th Cir.1982) (holding that,

in age discrimination case, memoranda prepared by plaintiff's supervisors showing unsatisfactory job performance was admissible because memoranda "did not constitute hearsay").

Other states also follow this rule. *See McElroy v. State,* 637 *N.W.*2d 488, 502 (Iowa 2001) (holding that "internal documents relied upon by an employer in making employment decisions in a discrimination case are generally not hearsay because they can be relevant to explain the employer's conduct"); *Salvi v. Suffolk County Sheriff's Dep't,* 67 *Mass.App.Ct.* 596, 855 *N.E.*2d 777, 785 (2006) (holding, in hostile work environment case, that out-of-court "statement was admissible not to prove what [another] said, which was hearsay, but to establish an offensive remark by [declarant] designed to intimidate, offend, or humiliate the plaintiff because of his sexual orientation"); *Green v. Augusta Ford,* 2003 *WL* 22100835, \*1 n. 2, 2003 *Me.Super. LEXIS* 182, \*2 n. 2 (Me.Super.Ct.2003) (holding, in sexual harassment case, that out-of-court offensive statement was not hearsay because offered not for truth of matter asserted, but as proof that statement was made). *But see Mackey v. U.P. Enters.,* 2005 *WL* 1798408, 2005 *Tex.App. LEXIS* 6044 (Tex.App.2005) (concluding that trial court's error in admitting investigative report in discrimination claim under business records exception of hearsay rule was harmless).

 We caution that, like any other evidence, the tender of an investigative report must be relevant. Thus, it is not enough for an employer to simply state that it has an investigative report concerning a terminated employee and that such report is *ipso facto* relevant to the terminated employee's discrimination or retaliation claim. That relevance burden requires that the employer also prove a logical nexus between the report and the witness who speaks of it, that is, that the employer knew of the report's contents and acted based on the information therein contained. *See Aliotta v. Nat'l R.R. Passenger Corp.,* 315 *F.*3d 756, 762 (7th Cir.2003) (holding that, in context of application of vicarious admission exception to hearsay rule in employment discrimination cases, "the declarant must be involved in the deci-

sion making process affecting the employment action involved (i.e., the declarant must be in management or in the company personnel function) in order for his statements to qualify as having been made within the scope of his employment"); *Williams v. Pharmacia, Inc.*, 137 *F.*3d 944, 950–51 (7th Cir.1998). Also, if the investigative report itself contains hearsay statements, each of these must be separately admissible or it is subject to redaction. *See, e.g., N.J.R.E.* 805 (explaining that "statement within the scope of [a hearsay] exception . . . shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements of [a hearsay] exception").

We hold, therefore, that the trial court abused its discretion when it excluded Resorts' investigative report solely on the basis that it was inadmissible hearsay. Instead, that report would be admissible as a non-hearsay statement relevant to show that Resorts terminated plaintiff's employment for non-pretextual reasons, provided Resorts also demonstrates (1) that one of its decision makers knew of the report's contents and acted in reliance thereof, and (2) that all portions of the report were separately admissible or properly and intelligibly redacted. Therefore, we hold that the trial court, subject to any relevant limitations, must determine anew whether that report is admissible upon retrial.

C.

Finally, despite the absence of any supporting proofs, the trial court also excluded Resorts' investigative report because it was maintained as an electronic record on a computer system that was capable of being modified and, therefore, in the trial court's view, it was not trustworthy. That determination was made in the context of the business records exception to the hearsay rule, which requires the exclusion of an otherwise qualified business record if "the sources of information or the method, purpose or circumstances of preparation indicate that it is not

trustworthy." *N.J.R.E.* 803(c)(6). However, business records maintained in a computer system are not treated differently from hard copies merely because they are stored electronically. Stated in the context of the business records exception to the hearsay rule, "[t]here is no reason to believe that a computerized business record is not trustworthy unless the opposing party comes forward with some evidence to question its reliability." *Hahnemann Univ. Hosp. v. Dudnick,* 292 *N.J.Super.* 11, 18, 678 A.2d 266 (App.Div.1996) (citations omitted); *Garden State Bank v. Graef,* 341 *N.J.Super.* 241, 245, 775 A.2d 189 (App.Div.2001) (same). All that is needed to lay the foundation for the admission of systematically prepared computer records otherwise qualified as business records is if "the witness (1) can demonstrate that the computer record is what the proponent claims and (2) is sufficiently familiar with the record system used and (3) can establish that it was the regular practice of that business to make the record." *Hahnemann Univ. Hosp. v. Dudnick, supra,* 292 *N.J.Super.* at 18, 678 A.2d 266 (citations omitted).

### V.

The judgment of the Appellate Division is reversed, the judgment of liability in favor of plaintiff is vacated in all respects,[6] and the case is remanded to the Law Division for further proceedings consistent with this opinion.

Justice WALLACE, JR., dissenting.

I respectfully dissent. I am in substantial agreement with the reasoning of the Appellate Division that we should not impose a

---

[6] Although Resorts challenged the damages verdict and attorneys' fees award before the Appellate Division, Resorts' appeal to this Court was limited solely to the two issues addressed in this opinion, both of which speak only to liability. We have been given no reason to disturb the jury's damages verdict or the trial court's award of attorneys' fees. Therefore, we limit the remand to a retrial on liability issues only. If, at retrial, Resorts is found liable, the earlier damages verdict will be reinstated and plaintiff may again apply for attorneys' fees; if Resorts is successful upon retrial, the earlier damages verdict and attorneys' fees award will lack a liability foundation and, thus, are to be vacated.

new standard and require that plaintiff establish a good faith, reasonable belief that he or she was engaged in protected activity. Moreover, the trial court, in rejecting defendant's request to give a good faith-reasonable belief charge to the jury, found that "if there is a reasonable requirement under the law in New Jersey it [has] already been met here." Consequently, I see no reason for a retrial.

Beyond that, I find no abuse of discretion in the trial court's exclusion of defendant's investigative report. The jury was informed that an investigation was undertaken and the investigator testified concerning his investigation. Thus, plaintiff was able to cross-examine the investigator to assist the jury in receiving a complete picture concerning the report, but without the admission of the report. I find no error, let alone reversible error.

*For reversal and remandment*—Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and RIVERA–SOTO—5.

*For affirmance*—Justice WALLACE—1.