NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3596
_____

L. L.; K. L., Jr., minors, individually and by their parent, K.L.,
Appellants

v.

EVESHAM TOWNSHIP BOARD OF EDUCATION;
FLORENCE V. EVANS ELEMENTARY SCHOOL;
LOU CASANOVA; JOHN SCAVELLI; PATRICIA LUCAS;
NICK DIBLASI; GAETON LUCEBELLO; JOHN DOES 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-13-cv-03696)
District Judge: The Honorable Joseph H. Rodriguez

Argued July 13, 2016

Before: SMITH, Chief Judge,* ROTH, and RENDELL, *Circuit Judges*

(Filed: September 27, 2017)

Olugbenga O. Abiona
1st Floor
1433 South 4th Street
Philadelphia, PA  19147

F. Michael Daily, Jr.          [ARGUED]
216 Haddon Avenue
Suite 106
Westmont, NJ  08108
        *Counsel for Appellant*

_____

* Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed
Chief Judge status on October 1, 2016.

Richard L. Goldstein
Walter F. Kawalec, III      [ARGUED]
Marshall Dennehey Warner Coleman & Goggin
200 Lake Drive East
Woodland Falls Corporate Park
Suite 300
Cherry Hill, NJ  08002
         *Counsel for Appellee*

_____

OPINION[*]
_____


SMITH, *Chief Judge.*

K.L., his daughter, L.L., and his son, K.L., Jr., are African-Americans (respectively referred to as KL, LL, and KLJR or collectively as plaintiffs).  The children attended public schools in the Evesham Township School District, a municipal entity, governed by a Board of Education.  As a result of numerous incidents that occurred between November 2007 and October 2012, KL initiated this civil action on behalf of his children and himself asserting claims of racial discrimination and retaliation.  Counts one through three alleged racial discrimination based on disparate treatment and harassment in violation of Title VI, 42 U.S.C. § 2000d, the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann § 10.5-12, and 42 U.S.C. § 1981.  Counts four through six alleged retaliation for engaging in protected activity in violation of Title VI, the NJLAD, and § 1981.  Count seven alleged, pursuant to 42 U.S.C. § 1983, that the defendants had deprived the plaintiffs of their rights

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

under the Equal Protection Clause.[1] The complaint named as defendants not only the Board of Education, but also the Florence V. Evans Elementary School, which the children attended; Lou Casanova, the school's principal; Nick DiBlasi, Casanova's successor; John Scavelli, Jr. and Patricia Lucas, both of whom served as Superintendents of the District; and Gaeton Lucebello, an Assistant Principal of the Demasi Middle School (collectively defendants or School defendants).

After discovery concluded, the School defendants successfully moved for summary judgment on all of plaintiffs' claims. This timely appeal followed.[2] We have carefully reviewed the record and considered all of the plaintiffs' arguments. For the reasons set forth below, we will affirm in part, reverse in part, and remand for further proceedings.

## I.

The claims in this case are based on a litany of allegedly discriminatory and retaliatory incidents that occurred from November 2007 through October 2012. During this period, LL attended first through sixth grade, while KLJR was in kindergarten through fifth grade. The alleged discrimination began in November of 2007, when the children complained to their father that they were being "singled out" and treated differently from white students at their elementary school. KL's and LL's classmates were predominantly

---

[1] Plaintiffs also raised state law claims for invasion of privacy and intentional infliction of emotional distress. They do not appeal the dismissal of those claims.

[2] The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we "apply the same standard as the district court." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). That is, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

non-African American.  KL made an informal complaint with a teacher, who indicated she would review the matter.

Several months later, in March of 2008, Principal Casanova filed a report with the New Jersey Department of Youth and Family Services (child services), advising that the children had complained of acts that might constitute abuse at the hands of their parents. KL denied that the children ever made any such complaints.  The children both asserted that they never reported abuse.  Child services found no evidence of wrongdoing.  In response, KL filed a complaint with the Office of Civil Rights of the United States Department of Education (OCR), alleging that the School District had discriminated against his children and, by filing its report with child services, retaliated against KL for his earlier complaint of discrimination.  In December of 2008, OCR stated in a letter to the School District that it had "determined that the District had a legitimate nondiscriminatory reason" for filing the complaint with child services given school policy and applicable state law.  OCR closed the investigation.  According to KL, however, the discrimination continued.

In support of this contention, KL cites numerous incidents that he believes demonstrate discriminatory intent.  These include some seemingly innocent complaints that are bereft of any suggestion of discrimination, such as: KLJR's fingers being jammed between desks by a white student when the class was moving their desks, JA216, 518; LL being pushed into a tree at recess by another student, JA363-64; LL being called "stupid" on one occasion by some of her white class mates without any admonishment by the teacher of the students who made the derogatory remark, JA532;  KLJR also being called "stupid"

4

and "dumb" several times over several years, JA296-97; LL's teacher not allowing her to eat a snack on one occasion, JA522; in April of 2011, LL's art teacher yelling at her and calling her the "worst student I have ever had," JA525, 532; and in October of 2011, two boys chasing LL at recess and trying to kiss her, although they never touched her, JA 382-83.

Yet the litany also reveals a few incidents that have clear or at least arguable racial overtones. The most notable incident occurred in February of 2011 when a white second-grader sitting in the desk in front of KLJR said the word "n*****." According to KLJR, the teacher smiled at the student's comment and walked out of the classroom. In March of 2011, KL claimed that, in the presence of two other teachers, Principal Casanova said to him: "We know what kind of neighborhood we are in with you." Almost a year later, in February of 2012, KL affirmed that when he was picking up his children from school, Principal DiBlasi told KL: "[H]ave a good one brother." According to KL, their declarations and the deposition testimony of the children, which showed how the plaintiffs were treated differently on the basis of their race, provides additional support.[3]

II.

---

[3] KL, *inter alia*, cites as examples: (1) LL's report that in February of 2009 a white classmate told her that she was "the whitest black person" the white student had ever seen; (2) LL's testimony that "[m]aybe three times" over the five year period between 2007 and 2012 other students told her that they did not like the color of her skin; and (3) in September 2010, some white students told LL that they did not like her and they did not like her hairstyle, which was in "African-American braids." KL affirmed that, although he reported these incidents to the administration, no remedial action was taken.

We apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Title VI disparate treatment claims. *Nat'l Ass'n for Advancement of Colored People v. Med. Ctr., Inc.*, 657 F.2d 1322, 1333–34 (3d Cir. 1981). This framework is also appropriate in analyzing a claim under the NJLAD. *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954–55 (N.J. 1999).

Here, the District Court concluded that plaintiffs could not establish a prima facie claim because they failed to identify any comparators—similarly situated non-African-American students—who were treated differently from plaintiffs. This was error. In *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261 (3d Cir. 2010), we reiterated that, under the *McDonnell Douglas* framework, "comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff's prima facie case." *Id.* at 272. Accordingly, we instructed that the plaintiffs could establish a prima facie case by showing "some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Id.* at 275.

Mindful that "'the burden of establishing a prima facie case . . . is not onerous,'" *id.* at 270-71 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)), we conclude that plaintiffs have adduced sufficient evidence to establish a prima facie case for purposes of their Title VI and the NJLAD claims of racial discrimination. The complaint about the teacher's purported tacit acceptance of the student's use of a racial epithet and the other complaints, if proved at trial, are sufficient to support an inference that the School

6

District's actions were discriminatory. Accordingly, we conclude that plaintiffs adduced a prima facie case of discriminatory treatment under Title VI and the NJLAD. We will reverse the entry of summary judgment on these claims and remand for further proceedings.[4]

III.

Plaintiffs' other theory of liability under Title VI and the NJLAD is based on a hostile environment due to their race. In order to establish liability based on a hostile environment for students under Title VI, a plaintiff must demonstrate "severe *or* pervasive" harassment based on the student's race, *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017), and "deliberate indifference to known acts of harassment." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).[5] Similarly, under the NJLAD, a student seeking to prevail on a hostile environment claim must establish that the complained of

---

[4] On appeal, plaintiffs do not challenge the District Court's grant of summary judgment in favor of the individual defendants on the ground that Title VI does not provide for individual liability. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003). For this reason, we will affirm the District Court's judgment in favor of the individual defendants on the Title VI claim.

The NJLAD provides for individual liability, N.J. Stat. Ann. § 10:5–12(f). Accordingly, we will also reverse and remand the judgment on the NJLAD claim in favor of the individual defendants. On remand, it will be the plaintiffs' burden to show that the individual defendants were personally involved. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[5] Although *Davis* involved a Title IX suit alleging sexual harassment, both parties agree that it provides the appropriate framework for a Title VI suit alleging a hostile environment. *See Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001) (acknowledging precedent that observed that Title IX was patterned after Title VI); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 317 (3d Cir. 2014) (favorably citing *Davis* in a Title VI case).

conduct was "severe or pervasive enough to" create a hostile environment. *Abramson v. William Paterson Coll. of N. J.*, 260 F.3d 265, 277 (3d Cir. 2001).

Having reviewed the record, we conclude that plaintiffs adduced sufficient evidence to establish a prima facie case of hostile environment as to KLJR, who was present when the "n-word" was uttered. *See Castleberry*, 863 F.3d at 264. The grant of summary judgment with regard to the hostile environment claims of KL and LL, however, were appropriate. The conduct to which KL and LL were each subjected over the five year period was neither severe nor pervasive.

IV.

Plaintiffs also allege that the School defendants are liable under 42 U.S.C. § 1981 for racial discrimination. Section 1981(a) provides that "[a]ll persons . . . shall have the same right in every State and Territory" to engage in certain enumerated activities. In their appellate brief, plaintiffs tether their § 1981 claim to the "make and enforce contracts" activity. *See* Appellants' Br. at 16. Subsection (b) defines the phrase "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." In *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), the Supreme Court observed that "[a]ny claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." *Id.* at 476. Indeed, after considering the history of the statute and the 1991 amendment adding § 1981(b), which defined the term "make and enforce," the Court declared that the

8

amendment "positively reinforced [the contractual] element by including in the new § 1981(b) reference to a 'contractual relationship.'" *Id.* at 477.

Because the School defendants moved for summary judgment on this claim, plaintiffs were obligated to "identify an impaired contractual relationship." *Id.* at 476. Because plaintiffs' appellate brief does not reference any contractual right on which their § 1981 claim could be grounded and because the context of the case—two children attending public school—does not suggest any contractual rights, we will affirm the District Court's entry of summary judgment in favor of defendants on this claim.[6]

## V.

Plaintiffs also asserted pursuant to § 1983 that the defendant violated their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In *Stewart v. Rutgers*, 120 F.3d 426 (3d Cir. 1997), we declared that the *McDonnell Douglas* "framework is applicable" to a race discrimination claim filed pursuant to § 1983. *Id.* at 432. But because the School District is a municipality and the Board is its governing body, the plaintiffs must also demonstrate that they acted pursuant to an official policy or custom. The District Court declared that the plaintiffs failed to do so, and plaintiffs do not appeal that ruling.

As for the claims against the individual defendants, sued in their individual capacities, plaintiffs need not establish that an individual acted pursuant to a custom or policy. Rather, they need only establish that the individual defendant, acting under color

---

[6] For this same reason, we will affirm the grant of summary judgment in favor of the School defendants on the § 1981 retaliation claim.

9

of state law, deprived the plaintiff of his or her rights under the Equal Protection Clause. *See Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Thus, we will remand the § 1983 claim as to the individual defendants for further proceedings.[7]

## VI.

Finally, we address plaintiffs' general assertion that the District Court erred by granting summary judgment in favor of the School defendants with respect to their claims of retaliation under Title VI, the NJLAD and the Equal Protection Clause. Before us, plaintiffs focus on only the March 2008 child services report, allegedly filed (by the principal) in retaliation for KL's informal complaint about racial discrimination (to a teacher) in November of 2007. We do likewise in conducting our review. In order, to state a claim for retaliation, a plaintiff must show: "(1) that she engaged in protected activity"; (2) that she suffered "a material adverse action"; and (3) "that a causal connection existed between the protected activity and the adverse action." *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (Title VI); *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 525 (N.J. 2007) (NJLAD).

We agree with the District Court that plaintiffs did not establish that the child services report was causally linked to KL's report about differential treatment. In his deposition, Principal Casanova denied that he was ever told of KL's informal complaint to

---

[7] We note that liability under § 1983 cannot attach unless the plaintiffs demonstrate that each defendant had "personal involvement in the alleged wrong[]; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). If plaintiffs succeed in this regard, whether qualified immunity applies may also be at issue on remand.

the teacher about alleged discrimination. **App. 119-20.** He thus testified that he had no knowledge of KL's protected activity when he contacted child services. KL offers no evidence to rebut Casanova's denial and therefore cannot establish the requisite causal connection to proceed past summary judgment. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 197 (3d Cir. 2015). Accordingly, we will affirm the grant of summary judgment in favor of the School defendants with respect to all of the retaliation claims.

V.

In sum, we will reverse the District Court's order granting summary judgment in favor of the School District and the Board of Education on the Title VI and NJLAD claims of racial discrimination based on discriminatory treatment. With respect to the plaintiffs' claims against the individuals, we will affirm the grant of summary judgment in favor of the individual defendants on the Title VI claim, but we will reverse the grant of summary judgment as to the individual defendants on the NJLAD claims. We will reverse the grant of summary judgment on KLJR's hostile environment claim under Title VI and the NJLAD. The grant of summary judgment on the hostile environment claims pressed by KL and LL, however, will not be disturbed. We will affirm the judgment in favor of the School District, the Board of Education and the Florence V. Evans School on the § 1983 equal protection discrimination claim, but reverse the judgment on this claim as to the individual defendants. Finally, we will affirm the judgment in favor of all of the School defendants on plaintiffs' § 1981 and retaliation claims. We will remand this matter for further proceedings consistent with this opinion.

11