NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4432
_____

ANGELA MILLER,
Appellant

v.

THOMAS JEFFERSON UNIVERSITY HOSPITAL; RICHARD GOSSAR;
CAROL STAFFIERI; MARIAN FEIL; THOMAS JEFFERSON UNIVERSITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-11-cv-00023)
District Judge: Honorable J. Curtis Joyner
_____

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: April 30, 2014)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

    Angela Miller ("Miller" or "Appellant") appeals from the District Court's grant of

summary judgment in favor of Thomas Jefferson University, Carol Staffieri, and Marian

Feil (collectively, "Appellees"[1]) on her claims of racial discrimination, retaliation, and hostile work environment, in violation of 42 U.S.C. § 1981.[2] For the reasons set forth below, we will affirm the District Court's decision.

## I. Background Facts

We write primarily for the benefit of the parties and recount only the essential facts.

Miller, an African-American woman, alleges that she was a victim of racial discrimination, while she was a student in the nurse anesthetist program at Thomas Jefferson University. In addition to coursework, the program requires clinical rotations where students learn alongside certified registered nurse anesthetists ("CRNAs"). Miller started the program in April 2006. She was assigned to Methodist Hospital ("Methodist") for her first clinical rotation with two other students — Judith Harvey (who is African-American) and Gabrielle Donofry (who is white). All three students had difficulties with Richard Gossar, the clinical coordinator at Methodist, who they claimed was overly harsh and critical. In bringing their complaint to the attention of the University, none of the students raised race as a basis for their complaints. Miller rotated to Jefferson Hospital

---

[1] By stipulation, Jefferson Hospital and Richard Gossar were dismissed from the case in November 2012.

[2] Miller's amended complaint included five claims: racial discrimination; retaliation; hostile work environment; breach of contract; and unjust enrichment. The District Court granted summary judgment to Appellees on all five counts. Miller now appeals only three of the original five claims — racial discrimination, retaliation, and hostile work environment.

2

for three months and then returned to Methodist. On November 12, 2006, she wrote to Michael Booth, Program Director, asking to "go over the reasons why at this point I am failing clinical." (App. 406.) In spite of this concern, she successfully completed her Fall 2006 semester. She returned to Methodist for the Spring 2007 semester.

Upon her return to Methodist, Miller continued to experience problems with Gossar. Ultimately, Gossar was removed from his position as clinical coordinator and replaced by Carol Staffieri. Despite Gossar's removal, Miller continued to receive critical evaluations during the Spring 2007 semester. Her problems included leaving a blood-pressure cuff on a patient's left arm, resulting in the operation being performed on the wrong arm.

On April 20, 2007, Miller called assistant program director Julia Feliciano and left a voicemail complaining of racial tension at Methodist.[3] Feliciano directed Miller to contact student services at the University. Miller contacted student services but chose not to file a complaint due to her concerns about the proposed investigation.

On May 22, 2007, Miller was told that she was not on track with her classmates, was given a plan for improvement, and placed on probation until August 2007. Miller rotated back to Jefferson Hospital where Marian Feil was the clinical coordinator. Feil gave Miller satisfactory ratings, except in categories relating to attendance. Miller passed

---

[3] Although in her brief, Miller attempts to contest when she first made a complaint of racial discrimination, during her deposition she admitted that her first complaint was made in her voicemail message to Feliciano. (App. 1224.)

the Summer 2007 semester and Feliciano ended Miller's probation.

Miller's supervisors continued to criticize Miller's clinical performance at Jefferson Hospital during the Fall 2007 semester. For example, on October 4, 2007, CRNA Katherine Celebre noted that Miller was not performing a procedure properly and was unprepared; Celebre then finished the procedure herself. On October 8, 2007, Miller was working with a doctor on a spinal procedure when she failed to follow the doctor's instructions and prematurely removed the entire epidural catheter instead of removing a needle, requiring the procedure to be repeated. The University placed Miller back on probation. In November 2007, Miller rotated to Deborah Heart and Lung Center, where she received positive evaluations. Despite her failure to satisfy most of the terms of her probation agreement, based on these positive evaluations, Miller was counseled on December 4, 2007 and given the opportunity to remediate her performance based on a new probation plan. She was not terminated from the program at this point.

Miller returned to Jefferson Hospital in December 2007. Based on her poor performance, including concerns from some of her supervisors that she might kill a patient,[4] Miller received a failing grade and was dismissed from the program on January

---

[4] Lisa Loostyn Gormley, one of the CRNAs at Jefferson Hospital, expressed her concern about Miller being unable to work independently during her final semester, commenting that "you could kill someone. I mean somebody could die if you cannot do that[,]" referring to the ability to work without close supervision. (App. 251.) In an evaluation dated October 8, 2007, Eileen Dirvin, another CRNA at Jefferson Hospital, expressed similar concerns, observing that Miller "just doesn't seem to understand how one small omission or misstep can lead to a catastrophe." (App. 649.)

4

8, 2008. Miller pursued all administrative appeals available at the University, but her dismissal was upheld. Separate from this appellate process, the Dean of Student Affairs investigated an allegation of racial discrimination raised by Miller in the appeal of her dismissal and concluded that no evidence of harassment, discrimination, or bias existed.

Miller commenced this action in January 2011. After discovery, the District Court granted Appellees' motions for summary judgment.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. "We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's grant of summary judgment." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 95 n.7 (3d Cir. 2009).

We review the District Court's order granting summary judgment de novo. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012). "Summary judgment shall be granted where no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law." *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (citing Fed. R. Civ. P. 56(a)). To be material, a fact must have the potential to alter the outcome of the case. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact-finder could rule in its favor." *Azur v. Chase Bank, USA, Nat. Ass'n.*, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted).

"We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party . . . Further, [w]e may affirm the District Court's order granting summary judgment on any grounds supported by the record." *Kossler v. Cristanti*, 564 F.3d 181, 186 (3d Cir. 2009) (citing *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### III.    Analysis

**A.  Retaliation**[5]

To state a claim of retaliation, Miller must show that: "(1) she engaged in a protected . . . activity, (2) [the] employer took an adverse . . . action after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity." *Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007).  "[O]ur case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v.*

---

[5] In her brief, Miller's only argument directed at the retaliation claim against Feil and Staffieri is included in a footnote where she argues the District Court ignored the "cat's paw" theory which, in her view, would establish individual liability for Feil and Staffieri. (Pl.-Appellant Br. 27 n.1.)  Miller misapprehends this theory.  Rather than providing for individual liability, the cat's paw theory allows actions of individuals to be attributed to the employer. *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1190 (2011).  Given the lack of applicability of this argument and the lack of other arguments regarding the retaliation claim against the two individuals, we will affirm the District Court's decision

6

*William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

The District Court concluded Miller had "failed to establish a causal link between her protected activity and her dismissal from the CRNA program at Jefferson University." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 652 (E.D. Pa. 2012). Miller argues that the District Court failed to properly take into account the ongoing antagonism she faced between the time of her complaint and her ultimate dismissal. Miller relies upon *Marra v. Philadelphia Housing Authority*, which states that

> [w]here the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee . . . that give rise to an inference of causation when considered as a whole.

497 F.3d 286, 302 (3d Cir. 2007) (internal citations omitted).

Miller points to a litany of actions by Feil, as well as negative evaluations from other CRNAs, to demonstrate ongoing antagonism. None of these points demonstrate antagonism sufficient to support an inference of causation. For example, Feil gave Miller satisfactory evaluations, except with regard to attendance. Other than Miller's allegation that the CRNAs at Methodist and Jefferson Hospital were friendly with each other, there is no support in the record for her claim that those persons at Jefferson Hospital who gave her negative evaluations knew of her complaint at Methodist. Miller's unsubstantiated

on this claim.

suspicions that the staff at both hospitals are friendly and therefore would have discussed her voice mail message do not create a genuine dispute as to a material fact, especially when considered in light of Jefferson's consistent explanation for Miller's dismissal, namely, her poor performance.

Thus, we conclude that the District Court did not err in ruling that no causal link supporting a claim of retaliation, pursuant to 42 U.S.C. § 1981, existed. We will affirm its decision.

## B. Discrimination Claim

"To establish a right to relief under § 1981, a plaintiff must show (1) that [she] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (internal quotation and citation omitted). Once the plaintiff establishes a prima facie case, the "burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the [adverse action].'" *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). After the employer provides a nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that the proffered reason was simply a pretext for discrimination. *Id.*

As to the claims against Feil and Staffieri, Miller has offered no evidence of intent to discriminate by either of them. In fact, Miller admitted that Staffieri did not

8

discriminate against or harass her. (App. 1228.) As to Feil, the only racially discriminatory action cited by Miller was a single instance of Feil using the phrase "you people." We have previously expressed skepticism that use of this phrase alone is "so revealing of discriminatory animus that it would enable a factfinder to conclude that a discriminatory attitude was, more likely than not, a motivating factor in the decision . . . ." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010). We continue to find it unlikely that a single utterance of the phrase "you people" suffices to establish a claim of racial discrimination. Given the lack of evidence, Miller has failed to establish a prima facie case against either Feil or Staffieri.

Turning to the claim against the University, assuming, without deciding, that Miller established her prima facie case, the University has offered a legitimate, nondiscriminatory reason for her dismissal from the program: her poor clinical evaluations. Miller made serious mistakes throughout her time in the program, as shown by her evaluations from numerous persons at Methodist and Jefferson Hospital.

In an effort to demonstrate that the University's proffered reason was pretextual, Miller points to her positive evaluations. "Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992). Further, Miller admits to making the mistakes cited in her negative evaluations, and does not challenge the validity of those negative evaluations. Therefore, she fails to support her claim of pretext. We will affirm the

9

District Court's grant of summary judgment on the discrimination claim under § 1981.

## C. Hostile Work Environment

To establish a hostile work environment claim against an employer, a plaintiff must prove the following: "(1) the employee suffered intentional discrimination because of [his or her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability."[6] *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)).

In assessing the evidence presented, we must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is . . . relevant . . . . But while psychological harm . . . may be taken into account, no single factor is required." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Caver v. City of Trenton*, 420 F.3d 243, 262 (3d

---

[6] "We have often stated that discriminatory harassment must be 'pervasive and regular.' But the Supreme Court's standard is 'severe *or* pervasive.' The difference is meaningful, and the Supreme Court's word controls, so we use the severe or pervasive standard here." *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006) (internal citations omitted), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also* 2 Charles A. Sullivan & Lauren M. Walter, *Employment Discrimination Law and Practice* § 7.07[A] (4th ed. 2009) ("The more objectionable the conduct, the less of it will suffice to be actionable; the more innocuous

Cir. 2005) ("In determining whether the conduct at issue is sufficiently extreme, we consider the 'totality of the circumstances.'" (quoting *Andrews*, 895 F.2d at 1482)).

However, not every comment, action or joke creates a hostile work environment. That is, "[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate . . . liability." *Weston*, 251 F.3d at 428. The Supreme Court has noted that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 82 (1998)).

To support her hostile work environment claim, Miller points to two instances of the use of "you people" — one by Gossar and one by Feil, as well as the fact that another African-American student was encouraged to seek psychiatric help after her father and sister died during her course of study. These three instances are neither severe nor pervasive and cannot support a claim of hostile work environment. We will therefore affirm the District Court's decision on this claim.

### III.    Conclusion

For the reasons set forth above, we will affirm the District Court's decision granting Appellees' motions for summary judgment.

---

the conduct, the more is required to 'contaminate' the work environment.").