**Richard A. KING, Jr., Appellant,**

v.

**CITY OF PHILADELPHIA.**

No. 02–2845.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 13, 2003.

Decided April 1, 2003.

Before: SLOVITER, NYGAARD, and ALARCÓN,* Circuit Judges.

* Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit,

## OPINION OF THE COURT

ALARCÓN, Circuit Judge.

Richard A. King, Jr. appeals from the order granting summary judgment in favor of the City of Philadelphia (the "City") and the dismissal of his statutory claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e–17 (1981 & Supp. 1994) ("Title VII"), and his constitutional causes of action under 42 U.S.C. § 1983 for alleged violations of his First and Fifth amendment rights, as applicable to the City under the Fourteenth amendment. King contends that he presented sufficient evidence to demonstrate that he was disciplined and ultimately terminated from his employment because he is African–American. We affirm because we conclude that the district court did not err in granting summary judgment.

### I

Inasmuch as the parties are familiar with the factual and procedural background of this case, we refer only to those facts as are pertinent to the issue under consideration. In December 1996, Officer Woltemate and another officer called King a "nigger." King immediately contacted the EEO Officer of Philadelphia Police Department and filed a discrimination complaint regarding the incident with the EEOC on August 8, 1997 and with the EEO Officer on October 20, 1997. After his first contact with the EEO Officer, he was suspended on three occasions. King's employment was terminated on April 2, 1998 following his arrest for allegedly making a false report that his pistol was stolen during the burglary of his home and for obstructing justice.

sitting by designation.

The City presented evidence in support of its motion for summary judgment regarding the bases for each suspension. The first suspension, ordered on May 22, 1997, was allegedly for insubordination, neglect of duty and disobedience to orders, because of King's failure to report to work, late arrival, and a failed sick check. The second suspension, ordered January 29, 1998, was allegedly for conduct unbecoming an officer and was ordered because the police department was notified that King had been involved in an off-duty automobile accident where he identified himself as a police officer, asked the other driver not report the accident, agreed to pay any damages and then refused to reimburse the other driver. The third suspension, ordered March 18, 1998, was allegedly for insubordination and neglect of duty because King was denied the use of sick time by a superior officer and then resubmitted the request to a lower ranking officer without informing that officer about the previous denial.

The City also offered evidence to demonstrate that it has a policy of terminating the employment of any officer who is arrested, whether or not he or she is ultimately convicted.

## II

King contends that he submitted evidence that he was subjected to a hostile work environment because he is African-American and that he was suspended and ultimately terminated from his employment because of his race and his complaint of racial discrimination. He asserts that he has demonstrated that reasons proffered by the City to justify the suspensions and the termination of his employment are pretextual and were retaliatory because he complained of racial discrimination. We exercise plenary review of the district court's grant of summary judgment and assume that facts asserted by the nonmoving party are true, where supported by affidavits or other evidentiary material. *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 (3rd Cir.1998).

If a plaintiff presents sufficient evidence to establish a prima facie case of a violation of Title VII, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for its personnel action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3rd Cir.1994). "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* To avoid summary judgment, the plaintiff's evidence of pretext must either meaningfully discredit each of the employer's proffered non-discriminatory reasons or show, by a preponderance of the evidence, that discrimination was a motivating or determinative reason for the employer's acts. *Id.* at 764.

■ The parties do not dispute that King has established a prima facie case of racial discrimination. In arguing that his arrest was a pretext to terminate him for racially discriminatory reasons, King claims that the arrest was "malicious." The City presented evidence that eight-five officers have been terminated after they were arrested pursuant to the City's policy. King offers no evidence regarding the termination of employment of these officers. Instead, King presented evidence that the police failed to investigate one potential witness to the alleged burglary and did not notify him that his pistol was found two days before the Internal Affairs Division ("IAD") concluded its investigation. This evidence does not demonstrate

that the City's reason for terminating King were pretextual. King's pistol was found *after* he was arrested. King has failed to demonstrate that he would not have been terminated had the IAD promptly notified him of the discovery.

The City produced evidence that none of the officers who investigated the alleged burglary of King's home had any knowledge of his discrimination complaints. King has offered no evidence to the contrary. His claim that the investigating officers must have known about his complaint is sheer speculation.

Lieutenant Brad Christy's deposition testimony that King had a "very long history in his short five years on the job" does not demonstrate that the officer was aware of King's discrimination complaint. Lieutenant Christy stated that King's disciplinary record was relevant in determining whether King might have falsified the burglary report. Lieutenant Christy asserted that he did not know King had filed a discrimination claim.

William Tarrance testified during King's post-termination arbitration hearing that an unidentified police detective stated he would see that King "rots in jail." This hearsay statement does not show that the declarant was aware of King's discrimination complaints or the basis for his or her animus.

■ King states that Lieutenant Ludd told Captain Jack Gattens, "this asshole files charges against ... Woltemate. We will fix him. He will never get promoted." This statement reflects Lieutenant Ludd's state of mind. It does not demonstrate that Captain Gattens' participation in the Police Board of Inquiry hearing board's discipline proceedings was improper because of a bias against King.

■ King also argues that, in terminating his employment because he was arrest-

ed, the City has treated him differently from the manner in which it handled allegations of criminal conduct concerning Captain Brady and Captain DiLacqua of the Philadelphia Police Department. King offered a newspaper article that reported that Captain Brady and Captain DiLacqua attempted to cover up a drunk driving accident. King has not demonstrated that Captain Brady and Captain DiLacqua were arrested but, nevertheless, retained their employment. Thus, this evidence does not demonstrate that the City does not have a policy of terminating the employment of officers who are arrested. *See Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 359 (3rd Cir.1999) (holding that in reviewing evidence of alleged discrimination, "our focus is on the particular criteria ... identified by the employer as the reason for the adverse action").

■ King contends that the City's reasons for ordering his suspensions are also pretexts for racial discrimination. King offered the deposition of Clyde Williams in which he testified that he heard of complaints regarding the treatment of African–American police officers in Philadelphia. He did not identify the declarants of these extrajudicial statements or their position within the Philadelphia Police Department, nor did he testify that he had personal knowledge of discriminatory treatment of African–American police officers. "[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony...." *Williams v. Borough of West Chester,* 891 F.2d 458, 466 n. 12 (3d Cir.1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Because Williams' deposition testimony is not based on personal knowledge, it should not be considered on a summary judgment motion. *See*

*Brown v. Muhlenberg Township,* 269 F.3d 205, 212 n. 5 (3d Cir.2001) (citing Fed. R.Civ.P. 56(e) requirements for admissible affidavits); *Blackburn v. United Parcel Serv.,* 179 F.3d 81, 95 (3d Cir.1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion.").

King's contention that the sick-leave logbook was allegedly manipulated to justify his suspensions is insufficient to overcome the City's explanation of the cause for such discipline. King's first suspension began before the alleged tampering with the logbook occurred. The first suspension was initiated by a recommendation from Lieutenant Clifford Ludd, who is also of African–American ancestry. King's other suspensions do not relate to information in the sick-leave log book. King's allegations that he was singled out for suspension because of his race is too unspecific to give rise to a reasonable inference that the City's justification is a pretext. *See Billet v. CIGNA Corp.,* 940 F.2d 812, 816 (3rd Cir.1991) ("[I]ndirect evidence must be enough to support a *reasonable* inference that the reasons given for the employment decision are pretextual. Merely reciting that [race] was the reason for the decision does not make it so."). King has failed to demonstrate that the City's proffered non-discriminatory reasons for taking adverse employment action against him were pretextual.

King's hostile work environment claim is based on the incident in December 1996 when he was subjected to a racial epithet by Officer Woltemate, and the evidence that Woltemate physically pushed him and, on another occasion, threatened to sabotage his work record. These are isolated and sporadic incidents. They do not demonstrate the pervasive atmosphere of harassment required to prove a Title VII violation. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (cautioning that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

## III

In support of his § 1983 claim, King contends that the City violated his First Amendment right to free speech by terminating his employment in response to his discrimination complaint, and deprived him of his constitutional right to due process by failing to inform him that his service revolver had been located.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

King has failed to produce any evidence of the existence of a policy or custom to retaliate against African–American police officers who complain of discrimination. Though King named individuals whom he asserts the City retaliated against because of their discrimination complaints, he has provided no specific facts to support this claim. The one incident that is clearly alleged is that Corporal Woltemate and another officer used a racial epithet. This evidence is not enough to establish a municipal custom or policy. *See Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3rd Cir.1995) (holding that vague assertions combined with one incident of illegal behavior do not establish a custom).

The judgment of the district court is AFFIRMED.