**Mary Beth OCASIO, Appellant,**

v.

**LEHIGH VALLEY FAMILY HEALTH CENTER.**

No. 03–1561.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 9, 2004.

Decided March 11, 2004.

Theodore Q. Thompson, Blue Bell, PA, for Appellant.

Jonathan B. Sprague, Post & Schell, Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge, ROTH and McKEE, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Plaintiff Mary Beth Ocasio appeals a grant of summary judgment in favor of defendant Lehigh Valley Family Health Center on her hostile work environment and racial discrimination claims. We will affirm.

### I.

#### A.

Ocasio began working at Lehigh Valley Family Health Center on January 4, 1999 as a medical assistant. She received two wage increases within the first six months of her employment. At her six-month performance review in August 1999, she received an overall performance score of 3.1 on a 5 point scale, where a "3" indicates that "performance standard is consistently met." The review recognized Ocasio's strong advocacy for the Hispanic population but noted she got flustered easily and was absent from the floor when needed.

Ocasio alleges that while employed she felt isolated and received the "cold shoulder" from some of her co-workers and supervisors. She claims that she was told to not speak Spanish with her co-workers and did not receive adequate training. She also alleges that a hostile work environment was created at Lehigh Valley through references to Hispanic employees as "Spanish people," an e-mail she received that ridiculed how a Spanish-speaking patient pronounced the word "gateway," and

a joke deriding the work ethic of Puerto Ricans. Finally, she claims she was unjustifiably disciplined for complaining about the alleged mistreatment of Hispanic patients.

Lehigh Valley contends that Ocasio's alleged rude and inappropriate behavior led to her work difficulties and ultimate termination. On February 21, 2000, Ocasio received a written warning for seven instances of absenteeism within the previous twelve months. She received a "verbal counseling session" on March 1, 2000 with Practice Manager Sherry Roth for having sent an inappropriate e-mail to a co-employee. On April 6, 2000, Roth counseled Ocasio again for changing her work assignments without prior warning and for her negative attitude towards co-employees and her supervisors. On April 28, 2000, Ocasio received a second written warning concerning eight instances of absenteeism within the previous twelve months.

On May 4, 2000, Ocasio received a "final warning" for breaking the chain of command and e-mailing a physician to complain about her supervisors. Also on May 4, she received counseling for leaving equipment in disinfecting solution for over five hours in contravention of Lehigh Valley's written procedures to not leave equipment in solution for over 45 minutes. Ocasio was warned that failure to improve her job performance could result in disciplinary action including suspension or termination.

In November 2001, Ocasio asked a Hispanic co-worker, Josie Clark, how Lehigh Valley had obtained a June 10, 2000 e-mail Ocasio had previously sent her. Clark complained to management that Ocasio had threatened her, and Lehigh Valley suspended Ocasio with pay pending an investigation. Upon conclusion of the investigation, Lehigh Valley believed Ocasio had threatened Clark, and on December 10, 2001, it suspended Ocasio for one day without pay.

On February 4, 2002, Ocasio directed an Hispanic outpatient to pick up a disability form and a prescription at the first floor pick-up box of the Family Health Center. When the outpatient arrived, Clark, the receptionist on duty, sent the patient upstairs to see Ocasio instead of directing the patient to the pick-up box. Ocasio returned with the patient to pick up the paperwork. Angry that Clark sent the patient upstairs, Ocasio slammed the drawer of the pick-up box. After walking the patient to the door, Ocasio overheard Clark remarking to two staff members that Ocasio had a "problem." Ocasio asked Clark if there was a problem, and Clark allegedly started yelling at her. Immediately following this incident, Ocasio located Clark's supervisor, Dorene Svanda, and admittedly yelled and cursed at Svanda while relating to her the details of the incident with Clark.

On February 7, 2002, Ocasio met with a management team that had investigated the drawer slamming incident with Clark and the yelling incident with Svanda. Upon the conclusion of the meeting, Ocasio was suspended and told to go home. Lehigh Valley management met with Ocasio again on February 18, 2002 to clarify the events of February 4, 2002 and allow her to present additional information regarding the events. At the end of this meeting, management informed Ocasio she was terminated effective immediately.

### B.

On July 24, 2000, Ocasio filed a claim alleging civil rights violations under the First Amendment, the Fourteenth Amendment, and 42 U.S.C. §§ 1981, 1982, 1985(1)(3), 1986 and 1988, plus claims for intentional infliction of emotional distress

and negligent supervision. The District Court granted Lehigh Valley's motion to dismiss on the civil rights claims but denied its motion to dismiss on the IIED claim. *Ocasio v. Lehigh Valley Family Health Ctr.*, 2000 U.S. Dist. LEXIS 16014 (E.D.Pa. Nov. 3, 2003). On December 12, 2001, the court granted Lehigh Valley's summary judgment motion to all surviving claims. *Ocasio v. Lehigh Valley Family Health Ctr.*, 2001 U.S. Dist. LEXIS 20449 (E.D.Pa. Dec. 12, 2001).

However, on January 9, 2002, the court granted Ocasio's motion for reconsideration, vacating its December 12, 2001 order, and on April 2, 2002, granted her motion for leave to file an amended complaint. The court then granted Lehigh Valley's motion for summary judgment in favor of Lehigh Valley on all claims. *Ocasio v. Lehigh Valley Family Health Ctr.*, 2003 U.S. Dist. LEXIS 3025 (E.D.Pa. Jan. 30, 2003). Ocasio timely appealed the District Court's holdings regarding the hostile work environment and racial discrimination claims.[1]

## II.

We exercise plenary review over the District Court's grant of summary judgment. *Reitz v. County of Bucks*, 125 F.3d 139, 143 (3d Cir.1997). We have appellate jurisdiction under 28 U.S.C. § 1291.

## III.

### A.

■ Ocasio first contends that the District Court erred in granting summary judgment in favor of Lehigh Valley concerning her hostile work environment claim. 42 U.S.C. § 1981 guarantees all persons the right "to make and enforce contracts." As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims,[2] and we apply the same standards as in a similar Title VII claim.[3]

To establish a *prima facie* case for employment discrimination due to a hostile work environment under 42 U.S.C. § 1981, a plaintiff must show:

(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996). A court

---

1. Ocasio did not discuss the IIED and retaliation claims in her brief and has so waived her right to appeal the summary judgment dismissal of the claim. *Surace v. Caterpillar, Inc.*, 111 F.3d 1039 n. 8 (3d Cir.1997) (noting that failure to raise an issue on appeal constitutes a waiver).

2. *See, e.g., Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir.2003) ("We now join every other circuit to have decided this issue and hold that the congressional amendment to § 1981 evinced congressional intent to permit hostile work environment claims under § 1981."); *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.1998) ("The Civil Rights Act of 1991 ... amended 42 U.S.C. § 1981 to

provide a cause of action for racial harassment.").

3. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir.2001) ("The elements [of a racially hostile work environment] are the same under either § 1981 or Title VII."); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir.2002) ("In analyzing a claim of hostile environment under section 1981, we apply the same standards as in a similar Title VII claim."); *Manatt*, 339 F.3d at 797 ("We also recognize that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.").

must look at the totality of the circumstances to determine whether there exists a hostile or abusive environment that is "severe enough to affect the psychological stability of a minority employee." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990). Isolated incidents over a long period of time do not constitute a hostile work environment. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 155 (3d Cir.1999).

Ocasio claims that several incidents demonstrated animus towards her race. Lehigh Valley once told Ocasio not to speak in Spanish with a co-worker.[4] She claims that Hispanic employees were referred to as "Spanish people" and that a Columbian co-worker made a joke about the work ethic of Puerto Ricans. Finally, she alleges that several white co-workers remarked to her and an Hispanic co-worker that they were in America and should speak English.

The District Court found that Ocasio failed to show that the alleged discrimination was pervasive and regular, and we find no error. There is insufficient evidence that these few alleged incidents created a hostile work environment during the three years of Ocasio's employment. We will affirm the judgment of the District Court.

### B.

■ Ocasio also claims that the District Court erred in granting summary judgment to Lehigh Valley on her race discrimination claim. To state a *prima facie* case of racial discrimination under 42 U.S.C. § 1981, Ocasio must show (1) that she is a member of a racial minority; (2) that Lehigh Valley intended to discriminate against her on the basis of her race; and (3) the discrimination concerned one of the activities enumerated in the statute. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir.2001). § 1981 can only be violated by intentional discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

The District Court found that Ocasio presented no evidence that Lehigh Valley intentionally discriminated against her because of her race. While Ocasio argues Lehigh Valley retaliated against her for acting as an advocate for Hispanic patients, this does not demonstrate retaliation against Ocasio because of her race. Ocasio did not establish a *prima facie* case for race discrimination, and the District Court properly granted Lehigh Valley's motion for summary judgment.

### IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

4. At the same time, Ocasio was never punished for speaking Spanish with a co-worker. In fact, she was encouraged to serve as a translator to Spanish-speaking patients in need of assistance.