PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3131
_____


ATRON CASTLEBERRY;
JOHN BROWN,

Appellants

v.

STI GROUP;
CHESAPEAKE ENERGY CORPORATION


_____


Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-15-cv-00153)
District Judge: Honorable Matthew W. Brann
_____


Argued March 28, 2017

Before: AMBRO, VANASKIE,
and RESTREPO, Circuit Judges

(Opinion filed July 14, 2017)

Daniel A. Horowitz, Esquire
Richard S. Swartz    (Argued)
Swartz Swidler
1101 Kings Highway North, Suite 402
Cherry Hill, NJ   08034

       Counsel for Appellant

Terri I. Patak, Esquire   (Argued)
Dickie McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA   15222

Daniel T. Brier, Esquire
Donna A. Walsh, Esquire   (Argued)
Myers Brier & Kelly
425 Spruce Street, Suite 200
Scranton, PA   18503

       Counsel for Appellees

_____

OPINION OF THE COURT
_____

AMBRO, Circuit Judge

Atron Castleberry and John Brown are two African-American males who were fired by Defendant STI Group, a staffing-placement agency (and thus a subcontractor) for Defendant Chesapeake Energy Corporation, an oil and natural

2

gas company.  Castleberry and Brown brought suit asserting that their termination was racially motivated, citing to various examples of discrimination such as remarks made at the workplace and unfair work treatment.  The District Court dismissed their complaint.  Because Plaintiffs state plausible claims of employment discrimination, we reverse and remand.

## I.  BACKGROUND

Castleberry and Brown were hired by STI Group in March 2010 as general laborers and supervised by managers from both STI Group and Chesapeake.  Shortly after being assigned to a particular worksite, the only other African-American male on the crew was fired.

Plaintiffs allege that, when they arrived at work on several occasions, someone had anonymously written "don't be black on the right of way" on the sign-in sheets.  They also assert that although they have significant experience working on pipelines (and more so than their non-African-American coworkers), they were only permitted to clean around the pipelines rather than work on them.  They claim that, when working on a fence-removal project, a supervisor told Castleberry and his coworkers that if they had "nigger-rigged" the fence, they would be fired.  Seven coworkers confirmed that occurred.  Following this last incident, Plaintiffs reported the offensive language to a superior and were fired two weeks later without explanation.  They were rehired shortly thereafter, but then terminated again for "lack of work."

Plaintiffs brought suit in District Court against both STI and Chesapeake alleging harassment, discrimination, and retaliation in violation of 42 U.S.C. § 1981.  As to the harassment claim, the Court determined it could not survive a

3

motion to dismiss because the facts pled did not support a finding that the alleged harassment was "pervasive and regular," which it deemed a requisite element to state a claim under § 1981. The Court similarly found that there were not sufficient facts alleged demonstrating intent to fire Plaintiffs because of their race or that their termination was racially motivated. Finally, regarding Plaintiffs' retaliation claim, it determined Plaintiffs failed to demonstrate that an objectively reasonable person would have believed that the comment made by their supervisor was unlawful—a necessary element to plead retaliation under § 1981.

## II. JURISDICTION AND STANDARD OF REVIEW

28 U.S.C. § 1291 gives us appellate jurisdiction. We review anew a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). When conducting our review, "we must accept the allegations in the complaint as true, [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quotation omitted). The allegations must have "facial plausibility," meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted).

## III. ANALYSIS

Plaintiffs challenge the District Court's dismissal of their claims under § 1981, which provides

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . .

In employment discrimination cases, these claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). Accordingly, a court reviews them under the burden-shifting framework outlined in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). *Brown*, 581 F.3d at 182. Under that framework, a plaintiff first must establish the requisite elements of his claim (called the *prima facie* elements); if so, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action, and then the plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken. *McDonnell Douglas*, 411 U.S. at 802-04. Using this approach, each claim is reviewed in turn.

### A. Harassment

Plaintiffs' harassment claim under § 1981 alleges a hostile work environment on the basis of race. To win, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). Plaintiffs assert that the District Court

5

applied the wrong legal standard in dismissing this claim when it required them to plead discrimination that was "pervasive *and* regular." *See* J.A. at 13 (emphasis added) (citing *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 879 (3d Cir. 2004)). Instead, they only were required to plead that they were subjected to a hostile work environment in which there was discrimination that was "severe *or* pervasive." *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (emphasis added).

Plaintiffs are correct even though our precedent is inconsistent. We have held that, to prevail on a harassment or hostile work environment claim, the plaintiff "must establish that . . . the discrimination was severe or pervasive." *Mandel*, 706 F.3d at 167 (3d Cir. 2013) (citation omitted); *see Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006); *Jensen*, 435 F.3d at 449; *see also Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 n.6 (3d Cir. 2014) (quotation omitted); *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 775 (3d Cir. 2009); *Hamera v. Cnty. of Berks*, 248 F. App'x 422, 424 (3d Cir. 2007) (quotation omitted).

We have also held that a plaintiff making such a claim must establish that the discrimination is "pervasive and regular." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (quotation omitted); *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *see also Ullrich v. U.S. Sec'y of Veteran Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012) (quotation omitted); *Ocasio*, 92 F. App'x at 879 (quotation omitted).

To make matters even more confusing, we have also determined that the correct standard to apply is "severe and pervasive." *Hare v. Potter*, 220 F. App'x 120, 131-32 (3d Cir. 2007). And if that were not enough, we have held that the correct standard to apply is "pervasive and regular" but then applied the "severe or pervasive" standard within the

6

same opinion. *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

Thus we clarify. The correct standard is "severe *or* pervasive." The Supreme Court has articulated as much on several occasions. *See, e.g.*, *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). We have noted that "[t]he difference [between the two standards] is meaningful" because "isolated incidents (*unless extremely serious*) will not amount to [harassment]." *Jensen*, 435 F.3d at 449 n.3 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Indeed, the distinction "means that 'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Id.* (quoting 2 Charles A. Sullivan, Michael J. Zimmer & Rebecca Hanner White, Employment Discrimination Law and Practice 455 (3d ed. 2002)). Whether an environment is hostile requires looking at the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Under the correct "severe or pervasive" standard, the parties dispute whether the supervisor's single use of the "n-word" is adequately "severe" and if one isolated incident is sufficient to state a claim under that standard. Although the resolution of that question is context-specific, it is clear that one such instance can suffice to state a claim. *See Faragher*, 524 U.S. at 788 ("isolated incidents" will amount to harassment if "extremely serious") (quotations omitted); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (per curium) (quotations omitted) (same); *Jensen*, 435

7

F.3d at 449 n.3 (same). However, a plaintiff must plead the incident to "be extreme to amount to a change in the terms and conditions of employment" for it to serve as the basis of a harassment claim. *Faragher*, 524 U.S. at 788.

Defendants argue that there is no case in which our Court has held a single isolated incident to constitute a hostile work environment. But they miss the point. The Supreme Court's decision to adopt the "severe or pervasive" standard—thereby abandoning a "regular" requirement—lends support that an isolated incident of discrimination (if severe) can suffice to state a claim for harassment. *See Suders*, 542 U.S. at 133. Otherwise, why create a disjunctive standard where alleged "severe" conduct—even if not at all "pervasive"—can establish a plaintiff's harassment claim? Defendants would have us read that alternative element out of the standard. We may not do so.

Indeed, other Circuits have similarly held that an extreme isolated act of discrimination can create a hostile work environment. *See, e.g.*, *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc) ("[W]e underscore the Supreme Court's pronouncement in *Faragher* . . ., that an isolated incident of harassment, if extremely serious, can create a hostile work environment."); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the "n-word"] by a supervisor in the presence of his subordinates . . . [that] impacts the work environment [] severely . . . .") (quotation omitted); *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1254 (11th Cir. 2014) (although a racially offensive carving on a workplace wall "was an isolated act, it was severe" enough that a "reasonable jury could find that [plaintiff's] work environment was objectively hostile"); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C.

8

Cir. 2013) ("This single incident [of using the "n-word"] might well have been sufficient to establish a hostile work environment.").

We are unpersuaded by Defendants' attempts to analogize this case to others in which an isolated incident was insufficient to establish a hostile work environment. The facts of those cases are unhelpful. For example, Defendants point us to *Breeden*, where two men and one woman met to review applications for a job opening. The woman read aloud a sexually explicit comment contained in one application and the two men "chuckled." 532 U.S. at 269. The Court determined that because the "ordinary terms and conditions of [the woman's] job required her to review the sexually explicit statement in the course of screening" job applications and that she "conceded that it did not bother or upset her to read the statement in the file," the isolated incident was not so severe as to constitute harassment. *Id.* at 271 (quotations omitted).

Likewise, Defendants' attempted comparisons to nonbinding district court and unpublished Third Circuit opinions are of no help either. *See, e.g.*, *King v. City of Phila.*, 66 F. App'x 300, 303 (3d Cir. 2003) (although a fired police officer was called the "n-word," and for that reason we did in fact determine he "had established a prima facie case," defendants carried their burden under the *McDonnell-Douglas* framework of providing evidence of legitimate, non-discriminatory reasons for his termination); *Miller*, 565 F. App'x 88 (did not deal with an isolated incident); *Al-Salem v. Bucks Cnty. Water & Sewer Auth.*, Civ. A. No. 97-6843, 1999 WL 167729 (E.D. Pa. Mar. 25, 1999) (employee who resigned to accept a higher paying job was called the "n-word" but there was no evidence on the record that he was detrimentally affected).

9

Here Plaintiffs alleged that their supervisor used a racially charged slur in front of them and their non-African-American coworkers. Within the same breath, the use of this word was accompanied by threats of termination (which ultimately occurred). This constitutes severe conduct that could create a hostile work environment. Moreover, the allegations could satisfy the "pervasive" alternative established by the standard. Plaintiffs alleged that not only did their supervisor make the derogatory comment, but "on several occasions" their sign-in sheets bore racially discriminatory comments and that they were required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work. Whether these allegations are true and whether they amount to "pervasiveness" are questions to be answered after discovery (for example, after determining how many times racial remarks were scribbled on the sign-in sheets). Plaintiffs have pled a plausible claim of a hostile work environment under either theory—that the harassment was "severe" or "pervasive."

But most importantly, what Defendants and the District Court ignore is that in every case they cite the claim was resolved at summary judgment. Under the *McDonnell-Douglas* framework, a claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established. That is so because "it may be difficult" for a plaintiff to prove discrimination "[b]efore discovery has unearthed relevant facts and evidence." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Here, Plaintiffs have established those

10

elements, and thus their claims should not have been dismissed at this early stage of the litigation.[1]

## B. Disparate Treatment Discrimination

Plaintiffs allege that they were the only black males assigned to their specific site, they were assigned undesirable duties, they were the targets of racial epithets, and they were fired twice due to their race. They believe these allegations amount to evidence of discrimination under a theory of disparate treatment. To establish a discrimination claim under § 1981, "a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (quotations omitted). Given the allegations noted, Plaintiffs' second amended complaint satisfies each of these elements in stating a § 1981 discrimination claim. *See* J.A. at 39-40.

The District Court surmised that "absent additional factual allegations, there may be perfectly neutral,

---

[1] Chesapeake also asserts that Plaintiffs' harassment claim should be dismissed because they have not demonstrated the fifth element (*respondeat superior* liability) as to it. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. This argument fails because the supervisor who used the racial slur accompanied by threats of termination was a Chesapeake employee.

11

nondiscriminatory reasons" for Plaintiffs' adverse employment actions, and accordingly dismissed this claim. J.A. at 18. Whether true or not, Defendants did not provide the Court with any of those potential reasons. That was their burden to carry. And, even had they done so, Plaintiffs still would have been afforded the opportunity to rebut the stated reasons as pretextual following discovery. The District Court therefore was incorrect in dismissing this claim, thereby jettisoning the *McDonnell Douglas* burden-shifting framework.

### C. Retaliation

Plaintiffs appeal the dismissal of their retaliation claim, which alleges that they were fired for reporting the racially discriminatory remark made by their supervisor. To establish a retaliation claim in violation of § 1981, a plaintiff must establish the following *prima facie* case: "(1) [he] engaged in [protected] activity . . .; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (quotation omitted). "In a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Estate of Oliva*, 604 F.3d at 798 (citation omitted). In doing so, the plaintiff "must have acted under a good faith, reasonable belief that a violation existed." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quotations omitted).

Here the District Court dismissed this claim because it was unreasonable for Plaintiffs to believe that a single incident of a discriminatory remark (which was the only incident they reported in their complaint to Defendants) could amount to unlawful activity. J.A. at 20 (citing *Breeden*, 532 U.S. at 271). However, this reasoning rests on the Court's

12

finding that an isolated discriminatory remark cannot amount to a violation of § 1981 by incorrectly applying the "pervasive and regular" standard. As discussed above, a single incident can amount to unlawful activity, particularly when applying the correct standard. Accordingly, the case should be remanded on this claim so that it may proceed to discovery.

### D. Disparate Impact Discrimination

In their Second Amended Complaint Plaintiffs also alleged discrimination on a theory of disparate impact. In addition to the allegations made in their disparate treatment claim, they allege that after they were fired there were no remaining African-American male employees at their work site, and thus Defendants intentionally implemented policies to prevent African-American males from working there by assigning them undesirable work tasks.

Although the District Court failed to address this claim, not doing so is irrelevant because a claim of disparate impact is unavailable under § 1981. The Supreme Court has rejected "that a violation of § 1981 could be made out by proof of disparate impact . . . ." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 383 n.8 (1982). In discussing the history of the statute and distinguishing it from Title VII, the Court explained that § 1981 was enacted to prevent purposeful discrimination and "did not include practices that were neutral on their face . . . but that had the incidental effect of disadvantaging blacks to a greater degree than whites." *Id.* at 388 (quotation omitted). Following that guidance, we held that "§ 1981 provide[s] a private cause of action for intentional discrimination only." *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 562 (3d Cir. 2002). Indeed, when comparing the two theories of discrimination brought under both Title VII and § 1981, we have explained

that a theory of "disparate impact" is brought "under Title VII alone" while a theory of "disparate treatment" can be brought under § 1981 as well. *Wilmore v. City of Wilmington*, 699 F.2d 667, 669-70 (3d Cir. 1983). Moreover, a theory of disparate impact is not supported by Plaintiffs' allegations, which is that there is a policy that only African-American males will be assigned undesirable work, and only they will be fired if they complain about discrimination. Those alleged policies are not facially neutral. Accordingly, we will not remand as to this claim.

\*   \*   \*   \*   \*

Plaintiffs have sufficiently alleged claims of harassment, disparate treatment discrimination, and retaliation under § 1981 to carry them over the motion-to-dismiss hurdle. We reverse and remand so that the *McDonnell Douglas* burden-shifting framework can be applied as the case proceeds through discovery.

14