NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2369
_____

ANDREA SESSOMS,
                        Appellant

v.

THE TRUSTEES OF THE
UNIVERSITY OF PENNSYLVANIA,
doing business as
THE UNIVERSITY OF
PENNSYLVANIA HEALTH SYSTEM
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-16-cv-02954
District Judge: The Honorable Gene E. K. Pratter

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2018

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH, *Circuit Judges*

(Filed: June 20, 2018)

_____

OPINION[*]
_____

SMITH, *Chief Judge*.

Andrea Sessoms appeals the grant of summary judgment to her former employer, the Trustees of the University of Pennsylvania ("Penn"), on her claims of discrimination, failure to accommodate disabilities, and retaliation. She also appeals an order denying a motion for recusal. Because the District Court properly granted summary judgment to Penn and did not abuse its discretion in declining to recuse, we will affirm.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I.[1]

Sessoms is an African-American woman who suffers from mental and physical disabilities. She initially began work at Penn in October 2012 as a temporary employee, and Penn later hired her in summer 2013 as a Human Resources Information Systems Coordinator. Maria Colavita, a Caucasian woman without disabilities, was her supervisor. At Sessoms's initial performance review in early 2014, Colavita rated Sessoms's work satisfactory.

Not long after the initial review, Sessoms's mother became gravely ill and eventually passed away. Sessoms then took a period of bereavement leave. During her mother's illness and after her return from leave, Colavita chastised Sessoms in front of other employees, raised her voice and rolled her eyes, did not listen to Sessoms's explanations for errors, and generally behaved unsympathetically. Sessoms did not perceive that Colavita treated her coworkers in a similar manner.

Sessoms began to experience physical symptoms such as memory loss and high blood pressure. She acknowledges that the memory loss may have caused her to make mistakes at work. When Sessoms informed Colavita about her physical symptoms, Colavita told her that her medical issues were irrelevant and she didn't

---

[1] This factual summary, which is consistent with the District Court's discussion and is presented in the light most favorable to Sessoms, is taken largely from her brief and the record citations referenced therein.

care about them.

On several occasions, Sessoms expressed concerns to others about Colavita's treatment of her, including the department's director, Margaret Alford, and human resources employee Joann Crowley. Sessoms felt Alford and Crowley were dismissive of her concerns. Sessoms asked Crowley to mediate the situation with Colavita, but Crowley failed to do so.

On September 4, 2014, Colavita called Sessoms into her office for a private meeting. During the meeting, Colavita used her own legs to spread Sessoms's legs apart. Sessoms, shocked, got up and walked out. This was the only time Colavita ever touched Sessoms.

About two weeks later, on September 12, 2014, Colavita called Sessoms into a meeting with her and Alford to sign a "coaching record" reflecting criticisms of Sessoms's performance and listing corrective actions for Sessoms to take. Agitated and upset after the meeting, Sessoms applied that same day for leave under the Family and Medical Leave Act (FMLA). Penn approved her FMLA request.

Sessoms remained on FMLA leave through December, then took additional medical leave through March 2015. During the FMLA leave, Sessoms filed a charge of discrimination with the EEOC. Toward the end of a total of 24 weeks of medical leave, and on advice of a doctor, Sessoms requested in writing that Penn

4

accommodate her disabilities.  She asked to "begin at part-time hours to transition back to work, eventually return to full-time," to change to a "different department, office, supervisor," and to work in a "lower-stress department/office" with "[a] different supervisor—due to current litigation [the EEOC charge] and client's allegations of misconduct toward current supervisor."  JA 208–09.

On April 13, 2015, Alford, Crowley, and a third supervisor met with Sessoms to advise her of the accommodations Penn was willing to make.  Among other things, Penn offered a part-time schedule, but at the same job, *i.e.*, still supervised by Colavita.  Sessoms did not consider these accommodations to be reasonable, preferring different part-time hours and another supervisor.  She therefore declined the accommodations.  Penn, in turn, terminated her employment on April 22, 2015.

Sessoms filed a charge of discrimination with the EEOC on November 7, 2014.  The EEOC dismissed the charge, and Sessoms ultimately filed suit in the District Court.[2]  On May 24, 2017, the District Court granted summary judgment

---

[2] In her amended complaint, Sessoms presented claims of unlawful discrimination on the basis of her gender, race, and disabilities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–213, and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951–63.  She also claimed that Penn failed to accommodate her disability in violation of the ADA and PHRA, and unlawfully retaliated against her for filing a charge of discrimination in violation of Title VII and the PHRA.

to Penn on all claims.  Sessoms timely appealed.

## II.[3]

We review *de novo* the District Court's grant of summary judgment to Penn. *Daubert v. NRA Group, LLC*, 861 F.3d 382, 388 (3d Cir. 2017).  Summary judgment is appropriate if Penn established that there is "no genuine dispute as to any material fact" and that it is therefore "entitled to judgment as a matter of law." *See id.* (quoting Fed. R. Civ. P. 56(a)).  As the non-moving party, the facts are viewed in the light most favorable to Sessoms, and all inferences are drawn in her favor.  *See Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017).

## A.

Sessoms contends Penn did not engage in a good faith effort to reasonably accommodate her disabilities.  To establish that an employer failed to participate in the interactive process of considering disability accommodations, the employee must demonstrate that (1) the employer knew of the disability; (2) the employee requested accommodations; (3) the employer did not make a good faith effort in identifying reasonable accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999).  An employer may demonstrate good faith in various ways, including meeting with the employee,

requesting information about the employee's condition and limitations, asking what the employee wants, showing signs of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome. *Id.* at 317. Where an employee requests an accommodation in the form of a transfer, she must make a showing that this accommodation is possible, *i.e.*, the existence of an equivalent-level, vacant position for which the employee could qualify. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Reasonable accommodation does not entitle an employee to a supervisor ideally suited to her needs. *Taylor*, 184 F.3d at 319 n.10. Nor does the law require a court to set the conditions of employment. *Gaul*, 134 F.3d at 581.

Penn demonstrated good faith in its negotiations with Sessoms. It is undisputed that her supervisors met with her, considered her requests, and offered several accommodations, including a part-time work schedule. JA 175. To the extent Sessoms declined these proposals because she sought a transfer to another department or supervisor, Sessoms did not meet her burden of showing that other positions existed to which transfer was possible. *See Gaul*, 134 F.3d at 580; *see also Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 230 (3d Cir. 2000). In addition, while she argues that she requested altered supervisory methods, the record does not reflect that she ever made such a request, *see* JA 208–09, or that

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and

7

altered supervisory methods could have accommodated her in any event. Rather, it is apparent that Sessoms was unwilling to agree to any accommodation that included continued supervision by Colavita. *See* JA 388 ("Basically . . . I would work if I was not assigned to Maria."). Under these circumstances, particularly in light of her failure to seek out other possible positions, her request to be supervised by someone other than Colavita was unreasonable. *See Gaul*, 134 F.3d at 579–81.

In addition, Sessoms argues that Penn should have attempted to accommodate her disabilities sooner than it did.[4] Sessoms contends that Penn should have proactively offered accommodations *before* she made a request for accommodations, and contends that she should be excused from making an earlier request because Colavita "actively discouraged" her from doing so. Sessoms Br. 25–26 (quoting *United States v. City and County of Denver*, 49 F. Supp. 2d 1233, 1241 (D. Colo. 1999)).

While an employee's accommodation request need not be formal, be in writing, or invoke any particular "magic words," our case law requires the *employee* or her representative to make the initial request in order to trigger an

---

1367. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1291.

[4] Sessoms proposes, for instance, that Crowley could have mediated her problems with Colavita, and that Sessoms's supervisors could have altered Colavita's level or methods of supervision. Sessoms Br. 27. Notably, Sessoms did not request these accommodations when she made her March 2015 written request, and there is no indication that Sessoms's earlier request to Crowley for mediation should have been taken as a disability accommodation request.

8

employer's duty to engage in the interactive process. *Taylor*, 184 F.3d at 313.

Penn thus was not obligated to engage in the interactive process before Sessoms made her first request for accommodations in March 2015.[5] Accordingly, this claim lacks merit.

---

[5] Moreover, even if we were persuaded by *City and County of Denver*, an out-of-Circuit District Court opinion, to put the onus on the employer to initiate the interactive process where the employee is "actively discouraged" from seeking accommodations (a step we do not, and need not, take in this case), we point out that Sessoms did not put forth evidence that she was "actively discouraged" from requesting accommodations. Colavita's statements that she did not care about Sessoms's medical needs do not amount to actively discouraging Sessoms from pursuing her legal rights. Indeed, Colavita's comments notwithstanding, Sessoms *did* request accommodations in March 2015, and the record is devoid of evidence that Colavita's statements deterred Sessoms from doing so sooner.

B.

Sessoms next claims that summary judgment was inappropriate as to her retaliation claim. To make out a *prima facie* case of retaliation, the employee must show that (1) she engaged in a protected activity; (2) the employer took an adverse action against her; and (3) there is a causal connection between the two. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). If she makes out a *prima facie* case, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for the adverse action; once it does, the burden returns to the employee to persuade the finder of fact that the employer's action was mere pretext. *Id.* at 342.

Sessoms engaged in protected activity by filing the charge of discrimination with the EEOC. That occurred on November 7, 2014, while Sessoms was on FMLA leave. She did not return to work before her April 22, 2015 termination. It cannot reasonably be questioned that the termination was a materially adverse action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Yet the passage of time between the EEOC charge and Sessoms's termination is not an unusually suggestive temporal proximity. *Id.* at 233 (three months, without more, is not unduly suggestive). And, the record is devoid of additional evidence that could constitute circumstantial evidence of retaliation during that period. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir.

10

2007).

Sessoms responds that her return from medical leave was Penn's first opportunity to retaliate against her. Even if we were to agree that Sessoms has made out a *prima facie* retaliation claim, she cannot prevail. The record demonstrates that Penn had a legitimate reason for her termination: her decision to decline Penn's proposed accommodations. Because we have already concluded that Sessoms would have agreed to return only if Colavita was not supervising her, and thus would not have been satisfied by any reasonable accommodation offered, Sessoms fails to demonstrate that Penn's decision to terminate her employment was not legitimate.

Sessoms also contends that a jury could find that the September 12, 2014 meeting was retaliatory and that the "coaching record" was a materially adverse action taken in response to protected activity, namely, Sessoms's complaints of mistreatment by Colavita. Again, even if we were to accept that Sessoms made a *prima facie* retaliation claim in this regard, the record reflects that Penn had a legitimate reason for issuing the "coaching record." Sessoms admittedly made mistakes at work, which increased over the time she was supervised by Colavita. JA 398–99. Because she made mistakes and she does not put forth evidence that the "coaching record" was false or inaccurate, Sessoms cannot establish that the

11

"coaching record" was mere pretext for retaliation.[6]

## C.

Next, Sessoms contends there is a triable issue on her hostile work environment claim based upon the September 4, 2014 "touching incident" with Colavita. Before the District Court, Sessoms "all but concede[d]" that the incident was not sufficiently severe to create a gender-based hostile work environment. JA 23. Now, Sessoms argues that "the physically humiliating and intentional leg contact here combined with inferences of needed submission constitutes severe or pervasive conduct" giving rise to a hostile work environment. Sessoms Br. 35.

Even if Sessoms did not waive this claim by "all but conced[ing]" it before the District Court, JA 23, we conclude that, considering the circumstances, this isolated incident was not "severe or pervasive conduct." Sessoms correctly observes our holding in *Castleberry v. STI Grp.*, 863 F.3d 259, 264–65 (3d Cir. 2017), that a complaint in which a plaintiff pleads an isolated incident of harassment may give rise to a hostile environment claim sufficient to survive a motion to dismiss if the particular circumstances show that the incident is so

---

[6] Sessoms also posits, for the first time on appeal, that Colavita retaliated against her during the September 4, 2014 meeting by inappropriately touching her legs. Sessoms argues that she raised issues about discrimination and her health problems prior to that meeting, and that Colavita's inappropriate touching during the meeting "is materially adverse as an action that is reasonably likely to deter protected activity." Sessoms Br. 29. This argument was not presented to the District Court in the first instance, and we therefore deem it waived. *See Tri-M Grp., LLC v.*

12

extreme as to amount to a change in the terms and conditions of employment. *Id.* at 264–66. Here, however, Sessoms recounts a single incident in which Colavita made unwanted physical contact with Sessoms's legs. This incident, while inappropriate and unwelcome, was not so egregious as to amount to a "change in the terms and conditions of employment." *Id.* at 264; *compare Moody v. Atlantic City Bd. of Ed.*, 870 F.3d 206, 215 (3d Cir. 2017). Accordingly, summary judgment was appropriate.[7]

### III.

Finally, Sessoms argues that the District Court acted unreasonably in declining to recuse pursuant to 28 U.S.C. § 455, claiming that the District Judge's employment as an adjunct professor at Penn's school of law gives rise to an appearance of impropriety. We review a recusal decision for abuse of discretion. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166 (3d Cir. 2004). Recusal is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned." *Id.* at 167 (quoting 28 U.S.C. § 455(a)). The standard is an objective one; recusal is required only if a reasonable person knowing all the circumstances would question the judge's impartiality. *Id.*

Here, the District Judge correctly observed that judiciary policy provides

---

*Sharp*, 638 F.3d 406, 416 (3d Cir. 2011).

[7] On appeal, Sessoms has abandoned her claims of disparate treatment due to race, gender, and disability discrimination. We therefore do not consider them.

13

that where, as here, the party to the litigation is the university, but not the employing law school itself, "[t]he judge should recuse (or remit) from cases involving the university . . . where the judge's impartiality might reasonably be questioned in view of the size and cohesiveness of the university, the degree of independence of the law school, the nature of the case, and related factors." Guide to Judiciary Policy, Compendium of Selected Ethics Advisory Opinions, § 3.4-3(a). Considering all of the circumstances, the District Judge observed that Sessoms's case "involves a limited number of individuals in the human resources department of an exceptionally large, sprawling health system, which is affiliated with a very large educational institution" that includes a law school. JA 6. She therefore determined that these factors, without more, did not give rise to circumstances in which her impartiality might reasonably be questioned. We agree that the District Court did not abuse its discretion in declining to recuse from this case.

IV.

For all of the foregoing reasons, we will affirm.